UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION,<br><br>          Plaintiff,<br><br>     v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>          Defendant. | Civil Action No. 22-2015 (CRC) |

**MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................ 1

Background ......................................................................................................................... 2

    I.      Factual and Procedural Background .................................................................... 2

    II.     The Record Facts ................................................................................................ 2

Legal Standards .................................................................................................................. 3

Argument ........................................................................................................................... 4

    I.      DHS Properly Released Responsive Records and Made Redactions and
           Withholdings ...................................................................................................... 4

           A.     DHS Properly Withheld and Redacted Records Based on the Deliberative
                  Process Privilege Under Exemption 5 ....................................................... 4

           B.     DHS Properly Withheld and Redacted Records Based on the Attorney-
                  Client Privileges Under Exemption 5 ...................................................... 12

           C.     DHS Properly Withheld and Redacted Records Based on Personal Privacy
                  Under Exemption 6 .................................................................................. 15

           D.     DHS Properly Withheld and Redacted Records Based on Their Law
                  Enforcement Investigative Nature Under Exemption 7(E)....................... 20

    II.     DHS Released All Non-Exempt, Reasonably Segregable Records ..................... 23

Conclusion ....................................................................................................................... 25

Defendant, the Department of Homeland Security ("DHS"), by and through undersigned counsel, respectfully submits this motion for summary judgment on the one-count Complaint brought under the Freedom of Information Act ("FOIA") by Plaintiff, Americans for Prosperity Foundation. DHS attaches its declaration, *Vaughn* index, Statement of Material Facts, and a proposed order requesting that the Court grant summary judgment in its favor.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiff submitted a sweeping FOIA request for a wide variety of records about the "Disinformation Governance Board." Compl. ¶¶ 2, 17; *see also* Compl. Ex. 1 (FOIA request). DHS "pause[d] the rollout of the Board in late May 2022[.]" *Id.* ¶ 4.

Plaintiff sued, bringing one claim under the FOIA. Compl. ¶ 1. Plaintiff sought the production of responsive records. *Id.* at 8 ("Relief Requested"). DHS answered. ECF No. 10. DHS searched for records and then processed and produced nonexempt records subject to certain FOIA exemptions, detailed in numerous joint status reports. *See, e.g.*, ECF Nos. 11, 31. The Court generously granted multiple extensions of time ahead of summary judgment. *See, e.g.*, ECF No. 33. The Parties productively used this time to substantially narrow the issues in dispute.

Only a few remain. Plaintiff does not challenge the reasonableness of DHS' search. Pavlik-Keenan Decl. ¶ 7. Among the many records produced, Plaintiff persists in its challenges to redactions to just twenty records. *Id.* ¶ 5.

### II.    The Record Facts

For a comprehensive statement, Defendant refers the Court to the attached Defendant's Statement of Material Facts.[1]

---

[1]    Most paragraphs of Defendants' Statement of Material Facts cite to a paragraph of the Declaration of Catrina M. Pavlik-Keenan ("Pavlik-Keenan Decl.")—Deputy Chief FOIA Officer

## LEGAL STANDARDS

The FOIA "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). A court "may award summary judgment solely on the basis of

---

for the Privacy Office of DHS. Pavlik-Keenan Decl. ¶ 1. The one exhibit attached to this declaration is the *Vaughn* index, cited as "*Vaughn* Row #."

information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility and Ethics in Washington v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Courts give agencies' FOIA declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).  A little over a year ago, the D.C. Circuit reaffirmed this long-standing principle in FOIA cases, writing that "[a]gency affidavits are accorded a presumption of good faith[.]"  *Cabezas v. Fed. Bureau of Investigation*, 109 F.4th 596, 602 (D.C. Cir. 2024) (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).

An agency's justification for withholding records "is sufficient if it appears 'logical' or 'plausible.'"  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)).  Review is *de novo*, 5 U.S.C. § 552(a)(4)(B), but a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review[,]" *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## ARGUMENT

**I.     DHS Properly Released Responsive Records and Made Redactions and Withholdings**

### A.     DHS Properly Withheld and Redacted Records Based on the Deliberative Process Privilege Under Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil

discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001). Some of DHS's Exemption 5 withholdings invoke the deliberative process privilege. Pavlik-Keenan Decl. ¶¶ 10–16.

The deliberative process privilege "protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Waterman v. IRS*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quotation marks omitted). The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was generated before the agency's final decision on the matter and deliberative if it was prepared to help the agency formulate its position." *Waterman*, 61 F.4th at 156 (quotation marks omitted). In other words, "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

For its purpose, the deliberative process privilege protects "materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967)).  This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021).  The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision.  *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010).  The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petrol. Info.*, 976 F.2d at 1433–34 (internal quotation marks omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent

injury to the quality of agency decisions.'"  *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

In this case, pursuant to the deliberative process privilege, DHS properly withheld twenty records which Plaintiff continues to challenge.  Pavlik-Keenan Decl. ¶¶ 10–16; *Vaughn* Rows 3–9, 11–14, 16–22.  Initially, the records withheld under Exemption 5 were "inter-agency" or "intra-agency" because they are records exchanged "between DHS employees" and "to different DHS offices."  Pavlik-Keenan Decl. ¶¶ 11-12; *see also Vaughn* Rows 3–9, 11–14, 16–22.  Next, these records were predecisional and deliberative.  The records discussed, *see* Pavlik-Keenan Decl. ¶¶ 10–16; *Vaughn* Rows 3–9, 11–14, 16–22, are among the materials that the D.C. Circuit has held "fall within Exemption 5's protection of 'memorandums or letters,'" 5 U.S.C. § 552(b)(5), which "include: agency draft opinions, draft historical manuscripts and reports, interview notes, agency notebooks, cost estimates, and calendar entries" along with "a range of documentary formats beyond traditional 'memorandums or letters.'"  *Georgia v. United States Dep't of Just.*, 148 F.4th 724, 735 (D.C. Cir. 2025) (collecting cases).  Here, the records include the following predecisional and deliberative materials: "draft memoranda, initial outlines, discussions of outcomes related to a tabletop exercise and limited portions of emails containing initial and preliminary concepts for a Disinformation Governance Board, suggested response to media inquiries, analysis of DHS efforts, and recommendations pertaining to a potential event that did not occur.  Many of these documents contain bullet lists and preliminary points, comments and extensive redline edits, and notes to different DHS offices requesting additional information or clarifications."  Pavlik-Keenan Decl. ¶ 11.  These particular records include:

- "a draft document that identifies gaps and discusses recommendations related to the capability of the Disinformation Governance Board" that "contains comments…, discussion points or language that is confusing, misleading, or ambiguous" along with

"extensive redline edits that propose deletions and additions"—a record constituting "one version that multiple offices in DHS were working on collaboratively," *Vaughn* Row 3;

- "a draft document providing a summary of the concept of operations" with "incomplete sections, incomplete appendices, comments for offices, and highlights clearing indicating this was a working document amongst multiple offices," *Vaughn* Row 4;

- a "memorandum…about options for organizing DHS efforts to counter disinformation and recommendations," including "strengths and weaknesses of each option" and "provid[ing] a recommendation," *Vaughn* Row 5;

- "descriptions of scenarios and discussion questions associated with a tabletop exercise designed to test DHS' response to the identified scenarios," including "deliberations about scenarios related to potential terrorist and cyber threats and potential courses of action DHS may take to address those threats, including identifying potential vulnerabilities and weaknesses in DHS' response and contingency plans for immigration emergencies," *Vaughn* Row 6;

- "a draft that contains fragmented thoughts and notes about potential content to include on each slide," including "text with question marks and notes to insert additional detail or markings such as 'TBD,'" *Vaughn* Row 7;

- "a partial draft with no date" for what "appears to be an initial outline…about potential roles and responsibilities to include and exclude for a potential Board," *Vaughn* Row 8;

- "a draft document discussing DHS authorities," that was prepared by "a DHS attorney" to "provide legal advice," *Vaughn* Row 9;

- "a discussion about the outcomes of the Misinformation, Disinformation, and Malinformation Tabletop Exercise DHS conducted" that "summarizes the lessons…and discusses potential options for changing roles and responsibilities," *Vaughn* Row 11;

- what "appears to be a precursor to the draft paper located at" a specified Bates number, *Vaughn* Row 12;

- "planning documentation" on "discussions about potential changes regarding DHS role…but these changes never came to fruition," *Vaughn* Rows 13, 21;

- email discussions about "strategy," *Vaughn* Row 14;

- a "document marked as Pre-decisional and draft," *Vaughn* Row 16;

- notes on "potential approaches for topics" ahead of a presentation, *Vaughn* Rows 17, 18; and

- documents with "redline edits," comments, and highlights, *Vaughn* Rows 19, 20.

Further evincing that these records are predecisional, "[i]n the attached *Vaughn* index, DHS also refers the Court and Plaintiff to the final versions or publicly released information when available." Pavlik-Keenan Decl. ¶ 11.

Disclosing these records withheld under the deliberative process privilege would result in foreseeable harm, as DHS concluded. Pavlik-Keenan Decl. ¶¶ 12–14; *Vaughn* Rows 3–9, 11–14, 16–22. DHS withheld these specific records "to prevent a chilling effect on the open and frank discussions on matters of policy between DHS employees, as this would undermine the agency's ability to perform its duties." Pavlik-Keenan Decl. ¶ 12. Indeed, "DHS depends upon the ability of its employees to offer candid ideas and opinions to agency decision-makers and to each other without the fear of public exposure; to curtail this process would be detrimental to DHS and all governmental entities." *Id.* DHS withheld records "about outcomes from a Tabletop Exercise that DHS conducted" that "summariz[e] lessons learned and identif[y] potential options for changing the roles and responsibilities of DHS offices and components." *Id.* "Release of these types of deliberations would cause harm to DHS' ability to prepare for potential scenarios or crisis situations. DHS uses tabletop exercise to understand potential weaknesses and strengths in its ability to respond to such scenarios or crisis situations. Releasing these types of deliberations would have a direct chilling effect on offices agreeing to participate in similar tabletop exercise in the future. Release of this information would disclose pertinent and significant pre-decisional recommendations, opinions, and considerations undertaken by Agency personnel in deliberations." *Id*. Additionally, the release of "initial concept and planning documents…would directly impact the ability of employees to plan and analyze questions and issues in writing." *Id.* ¶ 13. Moreover, "[t]he disclosure of draft documents and the comments contained therein could mislead the public, as the comments and text of draft documents often differ, sometimes significantly, from final agency positions." *Id.* ¶ 14. In sum, the record shows that foreseeable harm would result from further release of these records.

DHS addresses separately the deliberative process privilege's application to one record "submitted by a contractor of DHS who was engaged to provide communication analytics and support services to DHS specifically related to disinformation." *Vaughn* Row 16; *see also* Pavlik-Keenan Decl. ¶ 16. First, the record qualifies as intra-agency because the contractor worked for DHS. For communication outside the agency to qualify as intra-agency, "[t]he consultant corollary is limited to situations where the outside entity 'functions just as an employee would be expected to,' in the sense that the entity does not 'represent an interest of its own, or the interest of any other client, when it advises the agency that [engages] it.'" *Am. Oversight v. United States Dep't of Health & Hum. Servs.*, 101 F.4th 909, 916 (D.C. Cir. 2024) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 11 (2001)). "As *Klamath* put it, when an outsider functions "enough like the agency's own personnel" in the sense described above, its communications can be regarded as "intra-agency." *Id.* (quoting *Klamath*, 532 U.S. at 12); *see also Soucie v. David*, 448 F.2d 1067, 1076, 1078 n.44 (D.C. Cir. 1971). Here, DHS' contractor played essentially the same part in the agency's process of deliberation as documents prepared by agency personnel might have done. *Vaughn* Row 16; Pavlik-Keenan Decl. ¶ 16. DHS hired the contractor to provide communication analytics and provided the Department analysis about the reception of DHS' announcement of the Disinformation Governance Board. The contractor did not represent its own interests; the fact it was "paid" is irrelevant. *See Am. Oversight*, 101 F.4th at 916. Additionally, the contractor's work here did not seek a benefit at the expense of others. Hence, the contractor's interest are not adverse to DHS' interest. This makes the contractor here like the "private appraiser [that] prepared the draft appraisals" to which the consultant corollary applied, *Colorado Wild Pub. Lands v. U.S. Forest Serv.*, 691 F. Supp. 3d 149, 163 (D.D.C. 2023), and unlike situations held not intra-agency based on divergent interests: Indian tribes

- 10 -

communicating with the Department of the Interior about finite water resources, *Klamath*, *supra*, and Members of Congress communicating with HHS, *Am. Oversight*, *supra*.

Second, the record prepared by the DHS' contractor is predecisional and deliberative. *Vaughn* Row 16; Pavlik-Keenan Decl. ¶ 16. The record is "marked as Pre-decisional and draft." *Vaughn* Row 16. The record provided DHS "information about the news articles discussing or publicly available information about the DHS' Disinformation Governance Board, which falls within the purpose for which this company was hired to provide services to DHS. The document contains a selective compilation of different types of narratives about the Disinformation Governance Board, which warrants deliberative process privilege, where there was a thoughtful approach to compiling the exact narratives that the author chose to compile." *Id*. Foreseeable harm would follow from its disclosure because "[a]gencies must have the ability to understand the reception of new initiatives and understand the critiques of certain agency activities. Disclosing this document will have a direct chilling effect on federal employees evaluating new initiatives and activities." *Id.*

Thus, DHS properly withheld these predecisional, deliberative records based on the deliberative process privilege under Exemption 5 because it has demonstrated that no further records could be disclosed without causing reasonably foreseeable harm. *See Machado Amadis v. Dep't of State*, 971 F.3d 364, 371, (D.C. Cir. 2020) (affirming grant of summary judgment to the government where the agency "specifically focused on 'the information at issue' in the [documents] under review, and it concluded that disclosure of that information 'would' chill future internal discussions"); *see also id.* 370–73.

**B.      DHS Properly Withheld and Redacted Records Based on the Attorney-Client Privileges Under Exemption 5**

"The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998). "In order to demonstrate the applicability of the attorney-client privilege, the proponent must establish each of the following essential elements: (1) [t]he holder of the privilege is, or sought to be, a client; (2) [t]he person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) [t]he communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) [t]he privilege has been claimed by the client." *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010); *see also In re Sealed Case*, 737 F.2d 94, 98 (D.C. Cir. 1984) (same).

DHS asserted the attorney-client privilege over two records. Pavlik-Keenan Decl. ¶ 15; *Vaughn* Rows 9, 12. Those two records "contain the mental impressions, opinions, and legal analyses of attorneys for DHS. Those records also contain communications made in confidence for purposes of obtaining or providing legal advice." Pavlik-Keenan Decl. ¶ 15. For one of these records, "[a] DHS attorney prepared the document to analyze DHS statutory authorities and provide legal advice on DHS' statutory authorities…" *Vaughn* Row 9. For the other record, this includes materials "discussing DHS authorities…, including a discussion of DHS' Office of Intelligence and Analysis (I&A) functions." *Vaughn* Row 12.

Disclosing these records with attorney-client privileged material, discussed in the above paragraph, would harm interests the attorney-client privilege protects. Pavlik-Keenan Decl. ¶ 15; *Vaughn* Rows 9, 12. The harm of disclosing attorney-client communications is self-evident.

Regardless, disclosure foreseeably would harm interests the privilege protects under any standard. "The degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020). "In some instances, the withheld information may be so obviously sensitive . . . that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release may be enough." *Id.* Put differently, a record's "very context and purpose" can "make the foreseeability of harm manifest." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 360 (D.C. Cir. 2021). The D.C. Circuit has held that "the general injury caused by the breach of the attorney-client privilege" is "clear enough." *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003).[2] The very context and purpose of attorney-client communications makes the harm of disclosure self-evident. *See Cayuga Nation v. Dep't of the Int.*, Civ. A. No. 20-2642 (ABJ), 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022) ("disclosure of privileged information is a harm in and of itself when it comes to the attorney-client relationship"); *Ecological Rts. Found. v. EPA*, Civ. A. No. 19-0980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) ("When invoking the attorney-client privilege, [ ] an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm," as "disclosure of privileged information is a harm in and of itself").

Four factors buttress this conclusion that disclosure would cause foreseeable harm. *First*, the attorney-client privilege "rests at the center of our adversary system," promoting both "full and frank communication between attorneys and their clients" as well as "broader public interests in the observance of law and administration of justice." *Philip Morris Inc.*, 314 F.3d at 618 (cleaned

---

[2]     While *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 105 n.1 (2009), later abrogated *Philip Morris* insofar as the latter held that orders requiring disclosure of attorney-client materials qualify for interlocutory appeal, it did not disturb the aspect of *Philip Morris* that is relevant here.

up); *see also United States v. Zolin*, 491 U.S. 554, 562 (1989) (emphasizing "the centrality of open client and attorney communication to the proper functioning of our adversary system of justice").

*Second*, the attorney-client privilege's "ancient lineage," *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989), makes the harm inherent in its breach one that is well familiar to our law. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165, 169 (2011) (the attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law," and "among . . . the most established" of them" (quotation marks omitted)); *compare* H.R. Rep. No. 114-391, at 10 (2016) (the deliberative process privilege "is a relatively recent innovation by the judicial branch, first appearing in an American judicial decision in 1958" (citing *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939 (Ct. Cl. 1958))).

*Third*, the attorney-client privilege is unqualified, meaning that the interests it protects are ones that our law deems to outweigh all others. *Compare Swidler & Berlin v. United States*, 524 U.S. 399, 409 (1998) ("we have rejected use of a balancing test in defining the contours of the privilege"); *Moody v. IRS*, 654 F.2d 795, 799 n.10 (D.C. Cir. 1981) ("the attorney client privilege" is not "qualified"); *In re Sealed Case*, 107 F.3d 46, 51 (D.C. Cir. 1997) (attorney-client privilege is "absolute"), *with Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (deliberative process privilege "is qualified and can be overcome by a sufficient showing of need").

*Fourth*, "Congress was particularly concerned with increasing agency overuse and abuse of . . . the deliberative process privilege," not the attorney-client privilege, in enacting a foreseeable harm rule. *Reps. Comm.*, 3 F.4th at 369; *see also* H.R. Rep. No. 114-391, at 10 ("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse. . . . [T]his was a central problem FOIA was trying to fix . . . ." (citations omitted)).

- 14 -

For these reasons, the harm is self-evident if an agency is required to disclose attorney-client privileged documents.  Disclosure of the records protected here, Pavlik-Keenan Decl. ¶ 15; *Vaughn* Rows 9, 12, foreseeably would harm interests that the attorney-client privilege protects under any standard. *See Ams. for Prosperity Found. v. Ctrs. for Medicare & Medicaid Servs.*, Civ. A. No. 21-2021 (CJN), 2024 WL 578955, at *3 (D.D.C. Feb. 13, 2024) ("the Parties dedicate much of their briefs to litigating the proper standard for evaluating an agency's attempt to demonstrate reasonable foreseeability in the context of the attorney-client privilege . . . . The Court need not resolve this question because the government has shown reasonably foreseeable harm even under Plaintiff's standard").

Thus, the record supports that the attorney-client privilege protect the two records at *Vaughn* Rows 9 and 12, and foreseeable harm would result from their disclosure.

### C.   DHS Properly Withheld and Redacted Records Based on Personal Privacy Under Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 556(b)(6). Exemption 6 thus "protect[s] individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).  "The exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Id.* at 602.  Examining the threshold requirement to apply Exemption 6, courts "construe the phrase 'similar files' broadly," and thus apply Exemption 6 "to any Government records on an individual which can be identified as applying to that individual." *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quotation marks omitted).  "Courts look not to the nature of the files, but rather to the nature of the information at issue." *Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-

0642 (BAH), 2023 WL 5007881, at *3 (D.D.C. Aug. 7, 2023) (cleaned up).  Names, identifiers, and personal information can be identified as applying to individuals, and so fall within Exemption 6's scope.  *See Insider Inc.*, 92 F.4th at 1135 ("No party disputes the transition team members' names qualify as 'personnel . . . and similar files.'"); *Pub. Emps. for Envtl. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 200 n.1 (D.C. Cir. 2014) (the district court "concluded that Exemption 6 covered personal contact information"); *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (Exemption 6 covers "not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy" (cleaned up)).

The records withheld here satisfy Exemption 6's threshold requirement.  Pavlik-Keenan Decl. ¶¶ 20–22.  The records include the names, phone numbers, and email addresses of employees of DHS who are not senior leader, private individuals working with DHS, and the name and email address of a U.S. Senate employee.  *Id.*; *Vaughn* Rows 10, 14, 15, 22.

Next, if information satisfies Exemption 6's threshold requirement, courts apply a three-step test to determine whether Exemption 6 covers it.  "First, [courts] ask whether the agency has shown a privacy interest in the information being withheld."  *Insider Inc. v. Gen. Servs. Admin.*, 92 F.4th 1131, 1135 (D.C. Cir. 2024).  Second, "if a privacy interest exists, [courts] analyze whether the party seeking production has shown a public interest in the information."  *Id.*  "Third, if both a privacy interest and public interest exist, [courts] must then determine if the privacy interest substantially outweighs the public interest."  *Id.*  The records meet all three steps.

*Privacy interest*.  Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency."  *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 763–65 (1989).  This exemption is meant "to

protect individuals from a wide range of embarrassing disclosures." *Rural Hous. All. v. Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974). Moreover, "[w]here there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). Under the FOIA, any personal privacy interest greater than de minimis is "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009). Here, DHS appropriately identified the privacy interests in the names and contact information of its employees, a U.S. Senate employee, and private individuals who worked with DHS. Pavlik-Keenan Decl. ¶¶ 20–22; *Vaughn* Rows 10, 14, 15, 22. Moreover, Plaintiff has not provided third-party privacy waivers for the third-parties whose information is the subject of this request. *See Harrison v. FBI*, 611 F. Supp. 2d 54, 66 (D.D.C. 2009) ("personal privacy exemptions may be overcome by a waiver signed by the third person whose privacy interest would be affected by the disclosure"). Thus, those individuals have sufficient privacy interests.

*Public interest.* "[T]he only relevant public interest in disclosure to be weighed in [this] balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 495 (1994). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]" *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993). Here,

> The release of names, phone numbers, email address of DHS and other federal government employees would not aid the public's understanding of how the Department carries out its duties. Rather, the release of such information could subject those employees to unwarranted harassment, and as such the release of such information would "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6). The employees whose names are redacted in the documents

- 17 -

are not senior leaders.  They are not employees whose actions, decisions, or statements are subject to press coverage.  The employees are not public figures, and there is no public interest present that outweighs their right to personal privacy.  For those DHS employees that are public figures, DHS released their names.

Pavlik-Keenan Decl. ¶ 20.  Moreover,

> The release of names of individuals that are not federal employees would not aid the public's understanding of how the Department carries out its duties.  DHS released the names of the companies and domain addresses of emails to provide the public information about the companies that were working with DHS.  Disclosure of the names of individuals employed by a private company that does business with DHS would constitute an unwarranted invasion of the privacy of these individuals and outweighs the public's need to know the names of these individuals.  Releasing the names of the individuals would not shed light on DHS operations and activities, in addition to insights already gleaned by the companies that were communicating with DHS.

*Id.* ¶ 21.  Plaintiff cannot show a public interest in merely knowing the names and contact information of these individuals.

*Privacy interest substantially outweighs the public interest.*  In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* at 47 (citation omitted).  The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests. *See Carter v. Dep't of Com.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987).  And there is none that outweighs the personal privacy interests at stake here. *See Horvath*, 419 F.Supp.3d. at 48-49 (quoting *McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 188 (D.C. Cir. 1994) ("A mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest

- 18 -

sufficient to override the privacy interests protected by Exemption 7(C).”); *Consumers'*
*Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046,
1054 n.5 (D.C. Cir. 2009) (“[T]he rationale of . . . *McCutchen* for requiring more than unsupported
allegations that an agency is not doing its job applies under FOIA Exemption 6 as well.”).  When
the requesting party cannot demonstrate a public interest in disclosure, then the court will not order
disclosure, because “something, even a modest privacy interest, outweighs nothing every time.”
*Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989).

Here, “DHS will continue to withhold the names of individuals who are not public figures,
as the privacy of these individuals outweighs the publics need to know the names and does not
shed light on DHS operations and activities.”  Pavlik-Keenan Decl. ¶ 22.  Demonstrating that it
engaged in the balancing of interests, DHS did release the name of a senior DHS leader on a record
while on the same record it redacted the name of a U.S. Senate employee.  *Vaughn* Row 10.  Here,
“these names[,] and addresses prove nothing about” a public debate on a matter of government
policy or practice, so “[i]n the absence of a legitimate public interest, the private interest” here
“tilts the scales.”  *Jud. Watch, Inc.*, 449 F.3d at 153.  “Disclosure is only in the public interest
within the meaning of the FOIA if it ‘sheds light on an agency's performance of its statutory
duties.”  *Nat'l Sec. News Serv.*, 584 F. Supp. 2d at 97 (quoting *United States Dep't of Justice v.
Reporter's Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  “No public interest is
served by ‘disclosure of information about private citizens that is accumulated in various
governmental files but that reveals little or nothing about an agency's own conduct.’”  *Id.*  So too
here.  Plaintiff must go further than point to a general public interest in DHS' operations.  *See
Lepelletier*, 164 F.3d at 46.  Plaintiff must identify a particularized public interest in knowing the

identities of the particular individuals whose names and contact information are redacted on the records at issue, but this Plaintiff has not and cannot do that.

### D. DHS Properly Withheld and Redacted Records Based on Their Law Enforcement Investigative Nature Under Exemption 7(E)

#### 1. DHS Meets Exemption 7's Threshold Because the Records Sought Are Law Enforcement Records

Exemption 7(E) protects records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As a threshold matter, any material withheld under Exemption 7 must have been compiled for law enforcement purposes. *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 75 (D.D.C. 2008). When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)); *see also Willis*, 581 F. Supp. 2d at 75 ("As the D.C. Circuit has explained, where an agency 'specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference.'" (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998))). In these instances, a criminal law enforcement agency simply must show that "the nexus between the agency's activity . . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421) (internal quotation marks omitted).

Here, DHS' records meet the law enforcement threshold. Plaintiff directed the FOIA requests to DHS—a law enforcement agency. Pavlik-Keenan Decl. ¶ 25. DHS here withheld under Exemption 7(E) records prepared for law enforcement purposes. *Id.* ¶¶ 26–32; *Vaughn* Rows 6, 12. On one record, "DHS applied FOIA Exemption (b)(7)(e) because this slide deck

contains information related to the techniques that CBP and I&A use to carry out their missions to develop intelligence products and how those intelligence products are used to address threats, and manage border crossings in an emergency situation.  This document contains information related to CBP's techniques for managing border crossings at official points of entry, techniques CBP may utilize in an emergency situation to protect the U.S. borders, and an assessment about weaknesses and strengths." *Vaughn* Row 6.  For the other record, "DHS applied FOIA Exemption (b)(7)(E) to protect discussions about I&A functions and discussions about techniques and practices I&A uses that may be relevant or related to misinformation, disinformation, and malinformation.  The release of this type of information could reasonably be expected to risk circumvention of the law, as this information would enable individuals considering the threat vectors discussed in the scenarios to avoid detection by DHS and the Intelligence Community, thereby endangering U.S. national security." *Vaughn* Row 12.  Thus, DHS has met FOIA Exemption 7's threshold.

###### 2.      FOIA Exemption 7(E) Applies to DHS' Withholdings and Redactions

DHS has met the "low bar" under Exemption 7(E) by "demonstrat[ing] logically how the release of the requested information might create a risk of circumvention of the law." *Kowal v. Dep't of Just.*, 107 F.4th 1018, 1032–33 (D.C. Cir. 2024) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (alteration in original)); *see also id.* (upholding Exemption 7(E)'s application to "withhold[ing] records detailing investigative techniques, including technical information about computer databases and internal systems.").  Exemption 7(E) "looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Blackwell*, 646 F.3d at 42.  "Even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Vazquez*

- 21 -

*v. Dep't of Just.*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012), *aff'd*, No. 13-5197, 2013 WL 6818207, at *1 (D.C. Cir. Dec. 18, 2013) (cleaned up).

Here, "The information at issue here relates to the Customs and Border Protection (CBP) and Office of Intelligence and Analysis (I&A), and the investigation and techniques used to respond to certain types of terrorist scenarios. CBP is charged with enforcing immigration laws and interdicting individuals who attempt to illegally enter or move contraband across the U.S. borders between official point of entry under the Homeland Security Act of 2002." Pavlik-Keenan Decl. ¶ 26. On two records challenged by Plaintiff, "DHS withheld information relating to deliberations about scenarios for potential terrorist threats and potential courses of action DHS may take to address those threats, and discussions about DHS' Office of Intelligence and Analysis functions. Disclosure of this information would enable persons seeking to engage in criminal or terrorist activity to overcome law enforcement efforts by knowing the type of responses to expect, as well as potentially identify weaknesses in response that would allow such persons to overcome law enforcement efforts and elude detection." *Id.* ¶ 28. Additionally, "DHS withheld information related to a tabletop exercise pursuant to (b)(7)(E) to protect information pertaining to guidelines and techniques used to address terrorist and cyber-attacks and developing plans for immigration emergencies." *Id.* ¶ 29. And "[t]he information DHS has applied Exemption 7(E) to is law enforcement sensitive information related to CBP's techniques for managing border crossings at official points of entry, techniques CBP may utilize in an emergency situation to protect the U.S. borders, and an assessment about the current techniques. Additionally, disclosure would reveal I&A's techniques for developing intelligence reports and how those reports are used to address emerging threat situations. The release of this type of information would reasonably be expected to risk circumvention of the law, as this information would enable individuals considering the

threat vectors discussed in the scenarios to avoid detection by DHS and the Intelligence Community, thereby endangering U.S. national security.   Disclosure of these internal strategies and practices could permit people seeking to violate or circumvent the law to take proactive steps to counter operational actions taken by CBP and I&A." *Id.* ¶ 30.  The declaration shows that DHS' withholdings meet Exemption 7(E)'s low bar.

Satisfying the terms of Exemption 7(E) definitionally establishes a risk of foreseeable harm: "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm." *Reporters Comm. for Freedom of the Press v. U.S. Customs & Border Protection*, 567 F. Supp. 3d 97, 127–31 (D.D.C. 2021).  "The text of 7(E) allows withholding only when the withheld material 'could reasonably be expected to risk' circumvention of the law. Put differently, an agency must show some risk of circumvention before withholding material under 7(E).  The exemption's text thus already forces the agency to show some risk of harm." *Id.*

Given these weighty risks discussed, DHS satisfies Exemption 7(E).

## II.   DHS Released All Non-Exempt, Reasonably Segregable Records

An agency must take reasonable steps to segregate and release all non-exempt, reasonably segregable portions of responsive records.   5 U.S.C. § 552(a)(8)(A)(ii)(I), (b).   Non-exempt portions of responsive records need not be produced, however, if "they are inextricably intertwined with exempt portions." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quotation marks omitted).   Under FOIA, segregability analysis "does not call for parsing [a record] line-by-line or segregating material dispersed throughout the document.   Instead, the emphasis is on segregation of non-exempt material found in logically divisible sections." *Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*, 844 F.3d 246, 257 (D.C. Cir. 2016) (cleaned up). "When an agency demonstrates that records contain exempt information, as [Defendants have] done, it is entitled to a presumption that it complied with the obligation to disclose reasonably

segregable material." *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1058 (D.C. Cir. 2023) (cleaned up). The requester may "rebut this presumption," but only if it offers "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* (cleaned up). In addition, an agency is not required "to commit significant time and resources to the separation of disjointed words, phrases or even sentences which taken separately or together have minimal or no information content." *Mead Data Ctr. v. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977).

In this case, because the withheld materials contain exempt information, there is "a presumption that [Defendants] complied with the obligation to disclose reasonably segregable material," and Plaintiff can offer no "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation," as necessary to "rebut this presumption." *Flyers Rts.*, 71 F.4th at 1058. Here, DHS examined the records for segregability, and "[a] line-by-line review of the twenty records that are described in further detailed in the attached *Vaughn* Index was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. Foreseeable harm would result from any further disclosure of these twenty records. That foreseeable harm is discussed elsewhere in this declaration and in the attached *Vaughn* Index." Pavlik-Keenan Decl. ¶ 34. "With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released." *Id.* ¶ 35. *See Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (agency satisfied its segregability obligation where it "attested that [it] had conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information within responsive records," and "determine[d] that no additional information may be released without divulging information that falls within the

- 24 -

scope of one or more FOIA exemptions" (cleaned up)); *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371-72 (D.C. Cir. 2020) (agency "appropriately segregated exempt and non-exempt portions" of responsive records where it "conducted a line-by-line review, determined that some non-exempt, factual information within [records] could be segregated for release, and redacted only" exempt information (cleaned up)).

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court enter summary judgment in its favor. [3]

Dated: August 13, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:      */s/ Mason D. Bracken*
        MASON D. BRACKEN
        Assistant United States Attorney
        601 D Street, NW
        Washington, DC 20530
        (202) 252-2523
        mason.bracken@usdoj.gov

*Attorneys for the United States of America*

---

[3]      After the Parties narrowed the remaining issues in dispute, Defendant has briefed all the challenges to its redactions and withholdings that it understood Plaintiff to continue to raise during this litigation.  If Plaintiff in his opposition or cross-motion for summary judgment raises issues not addressed by Defendant herein, then Defendant reserves its right to respond to those arguments and to further seek summary judgment on those new issues raised by Plaintiff.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR PROSPERITY
FOUNDATION,

      Plaintiff,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

      Defendant.

Civil Action No. 22-2015 (CRC)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Motion for Summary Judgment, and the entire record herein, it is hereby

ORDERED that Defendant's Motion is GRANTED, and it is further

ORDERED that summary judgment is entered in Defendant's favor.

SO ORDERED:

_____

Date

_____

CHRISTOPHER R. COOPER
United States District Judge