**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | ) | Civil Action No. 22-2015 (CRC) |

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Ryan P. Mulvey
D.C. Bar No. 1024362

AMERICANS FOR PROSPERITY
FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

*Counsel for Plaintiff AFPF*

**TABLE OF CONTENTS**


Table of Authorities ..... ii

Introduction ..... 1

Factual and Procedural Background ..... 2

Standard of Review ..... 3

Argument ..... 4

I. DHS has not met its burden to justify its use of Exemption 5. ..... 4

A. The attorney work-product privilege does not apply. ..... 5

B. The attorney-client privilege does not apply. ..... 6

C. The deliberative-process privilege does not apply. ..... 9

1. DHS's use of the privilege is overbroad and its description of the withheld records is not detailed enough. ..... 10

2. DHS has not shown all the records are "predecisional." ..... 13

3. DHS has not shown all the records are "deliberative." ..... 15

4. DHS failed to offer any argument for withholding Record 8. ..... 16

II. DHS has not met its burden to justify its use of Exemption 6. ..... 17

III. DHS has not met its burden to justify its use of Exemption 7(E). ..... 20

IV. DHS has not satisfied its burden under the "foreseeable harm" standard. ..... 22

1. DHS has not shown foreseeable harm with the deliberative-process privilege. ..... 24

2. DHS has not shown foreseeable harm with the attorney privileges. ..... 24

3. DHS has not shown foreseeable harm with Exemption 6. ..... 27

4. DHS has not shown foreseeable harm with Exemption 7(E) ..... 27

V. DHS did not segregate out and release non-exempt portions of responsive records. ..... 28

VI. *In camera* review would be appropriate. ..... 30

Conclusion ..... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters LLC v. Department of Justice*,
248 F. Supp. 3d 115 (D.D.C. 2017) ....................20

*Advancement Project v. Department of Homeland Security*,
549 F. Supp. 3d 128 (D.D.C. 2021) ....................22

*American Civil Liberties Union v. Department of Justice*,
655 F.3d 15 (D.C. Cir. 2011) ....................19

*American Immigration Council v. Department of Homeland Security*,
21 F. Supp. 3d 60 (D.D.C. 2014) ....................7

*Americans for Prosperity Foundation v.*
*Centers for Medicare & Medicaid Services*,
No. 21-2021, 2024 WL 578955 (D.D.C. Feb. 13, 2024) ....................26

*Ancient Coin Collectors Guild v. Department of State*,
641 F.3d 504 (D.C. Cir. 2011) ....................9, 15

*Arthur Andersen & Co. v. Internal Revenue Service*,
679 F.2d 254 (D.C. Cir. 1982) ....................13

*Black Hills Clean Water Alliance v. U.S. Forest Service*,
No. 20-5034, 2022 WL 2340440 (D.S.D. June 29, 2022) ....................23, 25

*Blackwell v. Federal Bureau of Investigation*,
646 F.3d 37 (D.C. Cir. 2011) ....................22

*Bloche v. Department of Defense*,
414 F. Supp. 3d 6 (D.D.C. 2019) ....................10

*Carter v. Department of Commerce*,
830 F.2d 388 (D.C. Cir. 1987) ....................31.

*Cause of Action Institute v. Department of Justice*,
330 F. Supp. 3d 336 (D.D.C. 2018) ....................15, 16

*Cause of Action Institute v. Export-Import Bank of the United States*,
521 F. Supp. 3d 64 (D.D.C. 2021) ....................17, 29, 30

*Cayuga Nation v. Department of the Interior*,
No. 20-2642, 2022 WL 888178 (D.D.C. Mar. 25, 2022) ....................26

*Center for Investigative Reporting v. U.S. Customs & Border Protection*,
436 F. Supp. 3d 90 (D.D.C. 2019) .......... 25, 27

*Chemical Manufacturers Association v. Consumer Product Safety Commission*,
600 F. Supp. 114 (D.D.C. 1984) .......... 10

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) .......... 27

*Citizens for Responsibility & Ethics in Washington v. Department of Justice*,
955 F. Supp. 2d 4 (D.D.C. 2013) .......... 10

*Citizens for Responsibility & Ethics in Washington v. Department of Justice*,
538 F. Supp. 3d 124 (D.D.C. 2021) .......... 7

*Clemmons v. U.S. Army Crime Records Center*,
No. 05-2353, 2007 WL 1020827 (D.D.C. Mar. 20, 2007) .......... 18

*Coastal States Gas Corporation v. Department of Energy*,
617 F.2d 854 (D.C. Cir. 1980) .......... 5, 6, 7, 8, 9, 14, 15

*Competitive Enterprise Institute v. Environmental Protection Agency*,
232 F. Supp. 3d 172 (D.D.C. 2017) .......... 4

*Corley v. United States*,
556 U.S. 303 (2009) .......... 23

*Defenders of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) .......... 3

*Department of State v. Washington Post Co.*,
456 U.S. 595 (1982) .......... 17

*Doe v. Immigration & Customs Enforcement*,
No. 24-0617, 2025 WL 2779793 (D.D.C. Sept. 30, 2025) .......... 7, 25

*Ecological Rights Foundation v. Environmental Protection Agency*,
No. 19-0980, 2021 WL 535725 (D.D.C. Feb. 13, 2021) .......... 26

*Edmonds Institute v. Department of the Interior*,
383 F. Supp. 2d 105 (D.D.C. 2005) .......... 29

*Environmental Protection Agency v. Mink*,
410 U.S. 73 (1973) .......... 11, 27, 30

*Flyers Rights Education Fund, Inc. v. Federal Aviation Administration*,
71 F.4th 1051 (D.C. Cir. 2023)....29

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
243 F. Supp. 3d 155 (D.D.C. 2017)....10, 11

*Hayden v. National Security Agency*,
608 F.2d 1381 (D.C. Cir. 1979)....3

*Hertzberg v. Veneman*,
273 F. Supp. 2d 67 (D.D.C. 2003)....6

*Horowitz v. Peace Corps*,
428 F.3d 271 (D.C. Cir. 2005)....17

*Huffman v. Western Nuclear, Inc.*,
486 U.S. 663 (1988)....4

*Human Rights Defense Center v. U.S. Park Police*,
126 F.4th 708 (D.C. Cir. 2025)....18, 27

*Hunton & Williams LLP v. Environmental Protection Agency*,
248 F. Supp. 3d 220 (D.D.C. 2017)....19

*Ibrahim v. Department of State*,
311 F. Supp. 3d 134 (D.D.C. 2018)....23

*In re Lindsey*,
148 F.3d 1100 (D.C. Cir. 1998)....7

*In re Sealed Case*,
737 F.2d 94 (D.C. Cir. 1983)....7

*Jefferson v. Department of Justice*,
284 F.3d 172 (D.C. Cir. 2022)....20

*Jewish War Veterans of the United States, Inc. v. Mattis*,
266 F. Supp. 3d 248 (D.D.C. 2017)....26

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989)....3

*Judicial Watch, Inc. v. Department of Commerce*,
375 F. Supp. 3d 93 (D.D.C. 2019)....23

*Judicial Watch, Inc. v. Department of Justice*,
No. 17-0832, 2019 WL 4644029 (D.D.C. Sept. 24, 2019)....24

*Judicial Watch, Inc. v. Department of State*,
241 F. Supp. 3d 174 (D.D.C. 2017) ........................................................................16

*Judicial Watch, Inc. v. U.S. Postal Service*,
297 F. Supp. 2d 252 (D.D.C. 2004) ........................................................................13

*Judicial Watch of Florida v. Department of Justice*,
102 F. Supp. 2d 6 (D.D.C. 2000) ..............................................................................6

*King v. Department of Justice*,
830 F.2d 210 (D.C. Cir. 1987) ....................................................................................3

*Kolbusz v. Federal Bureau of Investigation*,
No. 17-0319, 2021 WL 1845352 (D.D.C. Feb. 17, 2021) ........................................22

*Krikorian v. Department of State*,
984 F.2d 461 (D.C. Cir. 1993) ..................................................................................28

*Lawyers' Committee for Civil Rights Under Law v. Department of Justice*,
No. 18-0167, 2020 WL 7319365 (D.D.C. Oct. 16, 2020) ...................................18, 19

*Levin v. National Highway Traffic Safety Administration*,
No. 20-3236, 2026 WL 523017 (D.D.C. Feb. 25, 2026) ..............................................5

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)......................................................................................................3

*Loving v. Department of Defense*,
550 F.3d 32 (D.C. Cir. 2008) .....................................................................................30

*Mapother v. Department of Justice*,
3 F.3d 1533 (D.C. Cir. 1993) .......................................................................................9

*Mead Data Central, Inc. v. Department of the Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ...................................................................6, 7, 10, 29

*Military Audit Project v. Casey*,
656 F.2d 724 (D.C. Cir. 1981) .....................................................................................4

*Moore v. Aspin*,
916 F. Supp. 32 (D.D.C. 1996) ....................................................................................4

*Multi Ag Media LLC v. Department of Agriculture*,
515 F.3d 1224 (D.C. Cir. 2008) ...................................................................................4

*National Archives & Records Administration v. Favish*,
541 U.S. 157 (2004).......................................................................................................3

*National Association of Home Builders v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) ....................................................................................4

*National Labor Relations Board v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1989) ....................................................................................4

*National Labor Relations Board v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ....................................................................................5

*National Press Club Journalism Institute v. Immigration & Customs Enforcement*,
No. 18-2932, 2023 WL 9001337 (D.D.C. Dec. 28, 2023) ....................................................7

*New York Times Co. v. Department of Justice*,
756 F.3d 100 (2d. Cir. 2014) ....................................................................................26

*People for the American Way Foundation v. National Park Service*,
503 F. Supp. 2d 284 (D.D.C. 2007) ....................................................................................10

*People for the American Way Foundation v. National Security Agency*,
462 F. Supp. 2d 21 (D.D.C. 2006) ....................................................................................3

*Petroleum Information Corp. v. Department of the Interior*,
976 F.2d 1429 (D.C. Cir. 1992) ....................................................................................11, 13

*Pinson v. Department of Justice*,
177 F. Supp. 3d 56 (D.D.C. 2016) ....................................................................................18

*Protect Democracy Project, Inc. v. Department of Energy*,
330 F. Supp. 3d 515 (D.D.C. 2018) ....................................................................................10

*Public Citizen, Inc. v. Office of Management & Budget*,
598 F.3d 865 (D.C. Cir. 2010) ....................................................................................9, 16

*Public Employees for Environmental Responsibility v. U.S. Section, International Boundary & Water Commission, U.S.-Mexico*,
740 F.3d 195 (D.C. Cir. 2014) ....................................................................................20

*Quick v. Department of Commerce*,
775 F. Supp. 2d 174 (D.D.C. 2011) ....................................................................................3

*Quiñon v. Federal Bureau of Investigation*,
86 F.3d 1222 (D.C. Cir. 1996) ....................................................................................31

*Reporters Committee for Freedom of the Press v. Customs & Border Protection*,
567 F. Supp. 3d 97 (D.D.C. 2021) ....................................................................................9, 27, 28

*Reporters Committee for Freedom of the Press v. Federal Bureau of Investigation*,
3 F.4th 350 (D.C. Cir. 2021) ........................................ 23

*Rosenberg v. Department of Defense*,
442 F. Supp. 3d 240 (D.D.C. 2020) ........................................ 23

*Ryan v. Department of Justice*,
617 F.2d 781 (D.C. Cir. 1980) ........................................ 11, 30

*Sai v. Transportation Security Administration*,
315 F. Supp. 3d 218 (D.D.C. 2018) ........................................ 18

*Schiller v. National Labor Relations Board*,
964 F.2d 1205 (D.C. Cir. 1992) ........................................ 28

*Schoenman v. Federal Bureau of Investigation*,
575 F. Supp. 2d 136 (D.D.C. 2008) ........................................ 4

*Senate of Puerto Rico ex rel. Judiciary Committee v. Department of Justice*,
823 F.2d 574 (D.C. Cir. 1987) ........................................ 14

*Sierra Club v. U.S. Fish & Wildlife Service*,
523 F. Supp. 3d 24 (D.D.C. 2021) ........................................ 15

*Spirko v. U.S. Postal Service*,
147 F.3d 992 (D.C. Cir. 1998) ........................................ 30

*Stern v. Federal Bureau of Investigation*,
737 F.2d 84, 88–89 (D.C. Cir. 1984) ........................................ 20

*Stolt-Nielsen Transportation Group Ltd. v. United States*,
534 F.3d 728 (D.C. Cir. 2008) ........................................ 30

*Trans-Pacific Policing Agreement v. U.S. Customs Service*,
177 F.3d 1022 (D.C. Cir. 1999) ........................................ 28

*Transgender Law Center v. Immigration & Customs Enforcement*,
775 F. Supp. 3d 131 (D.D.C. 2025) ........................................ 12, 13, 18, 19, 21, 24

*United States v. Weber Aircraft Corp.*,
465 U.S. 792 (1984) ........................................ 5, 27

*Vaughn v. Rosen*,
484 F.2d 820 (D.C. Cir. 1973) ........................................ 28

*Vaughn v. Rosen*,
523 F.2d 1136 (D.C. Cir. 1975) ....................9, 11, 15

*Wilderness Society v. Department of the Interior*,
344 F. Supp. 2d 1 (D.D.C. 2004) ....................11

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................3, 30

5 U.S.C. § 552(a)(8)(A)(i) ....................4

5 U.S.C. § 552(a)(8)(A)(i)(I) ....................23

5 U.S.C. § 552(a)(8)(A)(ii)(II) ....................25

5 U.S.C. § 552(b) ....................25

5 U.S.C. § 552(b)(5) ....................5

5 U.S.C. § 552(b)(6) ....................17

5 U.S.C. § 552(b)(7)(E) ....................20, 21

**Federal Rules**

Federal Rule of Civil Procedure 56(a) ....................3

Federal Rule of Evidence 201 ....................22

**Other Authorities**

Department of Homeland Security, "Summary of Terrorism Threat to the U.S. Homeland," National Terrorism Advisory System Bulletin (Feb. 7, 2022) ....................22

Department of Justice, OIP Guidance: Applying the "Foreseeable Harm" Standard Under Exemption 5, FOIA Update, vol. XV, no. 2 (Jan. 1, 1994) ....................25

H.R. Rep. No. 114-391 (2016) ....................27

John C. Brinkerhoff, Jr. & Daniel B. Listwa, *Deference Conservation—FOIA's Lessons for a Chevron-less World*, 71 Stan. L. Rev. Online 146 (2018) ....................3

Margaret Kwoka, *Deferring to Secrecy*, 54 Boston College L. Rev. 185 (2013) ....................3

## INTRODUCTION

Labeling a record a "draft" does not make it deliberative. Characterizing legal analysis as "privileged" does not establish an attorney-client relationship. And invoking "law enforcement" responsibilities does not transform something into law-enforcement techniques or procedures. Under the Freedom of Information Act ("FOIA"), labels are not enough. An agency trying to withhold records must instead prove, with reasonable specificity, that each asserted exemption applies and there is foreseeable harm in disclosure. Defendant U.S. Department of Homeland Security ("DHS") has failed to do that here.

This long-running dispute has narrowed considerably. Plaintiff Americans for Prosperity Foundation ("AFPF") requested records about DHS's short-lived Disinformation Governance Board. Only twenty records remain in dispute, but DHS is withholding most of them in full—or nearly in full—under Exemptions 5, 6, and 7(E). DHS's arguments cannot withstand *de novo* review, and its pleas for deferential treatment should be rejected. The agency's attorney-privilege claims fail because DHS has not identified any threats of litigation or client confidences. Its deliberative-process arguments rest on many shaky generalizations and the mechanical designation of "drafts." DHS seeks to keep the name of a Senate staffer who collaborated with a senior agency official secret based on speculative concerns about harassment. And its Exemption 7(E) arguments never establish how records qualify as "compiled" for a law-enforcement purpose.

Even if DHS could satisfy the technical requirements for these exemptions, it has neither satisfied the foreseeable-harm standard nor conducted an adequate segregability review. These deficiencies preclude summary judgment for the government and counsel in favor of *in camera* review. The Court should grant AFPF's cross-motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2022, DHS announced the creation of the Disinformation Governance Board ("Board"), citing the need to combat conspiracy theories and "disinformation," as well as to protect "privacy, civil rights, and civil liberties." Compl. ¶ 1, ECF No. 1; Pl.'s Statement of Undisputed Material Facts ¶ 5 [hereinafter, "Pl.'s SUMF"]. When that announcement was made, the Board had already existed for about two months. Pl.'s SUMF ¶ 1. DHS's establishment of the Board met with widespread criticism. Pl.'s SUMF ¶ 6. Congressional leaders sent oversight letters voicing concerns over the Board's potential for chilling or punishing protected speech. *See* Compl. ¶ 10; *see also* Compl. ¶ 16. Non-governmental organizations highlighted similar concerns. Compl. ¶ 11. DHS eventually "terminated" the Board and "rescinded its charter" in August 2022. Pl.'s SUMF ¶ 8.

In May 2022, AFPF submitted a targeted FOIA request to DHS, seeking access to three categories of records that could provide insight into the Board, its creation, and its activities. Pl.'s SUMF ¶ 10; Decl. of Ryan P. Mulvey ¶ 12; Mulvey Decl. Ex. 4. DHS acknowledged receipt of AFPF's request, Pl.'s SUMF ¶ 11, but failed to meet its deadline for a response. Pl.'s SUMF ¶ 13.

AFPF filed suit in July 2022. Pl.'s SUMF ¶ 13. The parties negotiated a narrowed search, which DHS completed at the end of September 2022. Pl.'s SUMF ¶¶ 15–16. The agency identified 3,349 pages of responsive records, Pl.'s SUMF ¶ 16, and started interim productions in December 2022, which continued apace until October 2024. Pl.'s SUMF ¶¶ 17–18. In February 2025, AFPF advised DHS of what AFPF believed were the outstanding issues. Pl.'s SUMF ¶ 19. DHS spent roughly sixteen months reevaluating its treatment of records. Pl.'s SUMF ¶ 20. Only twenty records remain, Pl.'s SUMF ¶ 21, totaling 135 pages. *See* Mulvey Decl. Exs. 5–24.

## STANDARD OF REVIEW

"Congress enacted FOIA to introduce transparency into government activities." *Quick v. Dep't of Commerce*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011) (cleaned up and citation omitted). The statute is a "means for citizens to know what the Government is up to" and "defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (cleaned up and citation omitted). Indeed, the "basic purpose of FOIA is to ensure an informed citizenry . . . needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1989). FOIA rights are a bulwark to the "fundamental principle of public access" to records often "shielded unnecessarily from public view . . . [by] possibly unwilling official hands." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) (cleaned up and citation omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "[T]he burden is on the agency to sustain its action" in all instances. 5 U.S.C. § 552(a)(4)(B). Deference to an agency, therefore, finds no place under the FOIA.[1] A district court must determine *de novo* that "the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from

[1] DHS argues the Court should "'respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review[.]'" Def.'s Mot. for Summ. J. & Mem. in Support Thereof at 4 [hereinafter, "Def.'s Br."], ECF No. 37 (citing *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)). This is mistaken. *First*, to the extent *Hayden* suggests any sort of solicitude should be shown to an agency, it is limited to the Exemption 1 context. *Hayden*, 608 F.2d at 1388; *see King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987); *People for the Am. Way Found. v. Nat'l Sec. Agency*, 462 F. Supp. 2d 21, 33–34 (D.D.C. 2006). *Second*, it is widely disputed whether such deference is consistent with the plain text of the FOIA. *See* John C. Brinkerhoff, Jr. & Daniel B. Listwa, *Deference Conservation—FOIA's Lessons for a Chevron-less World*, 71 Stan. L. Rev. Online 146, 149 (2018); *see also* Margaret Kwoka, *Deferring to Secrecy*, 54 Boston College L. Rev. 185, 204–211 (2013). It is the prerogative of the courts to decide "'what the law is,'" including the scope, meaning, and proper application of all FOIA exemptions. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citation omitted).

disclosure." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (cleaned up and citation omitted). It must also ensure the agency has shown how disclosure is either "prohibited by law" or it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i).

An agency meets its burden under the FOIA by proffering affidavits that "describe the documents and the justifications for nondisclosure with reasonably specific detail" that is "not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The agency "must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed[.]" *Competitive Enter. Inst. v. Envtl. Prot. Agency*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). The reviewing court analyzes all "underlying facts and inferences . . . in the light most favorable to the FOIA requester." *Schoenman v. Fed. Bureau of Investigation*, 575 F. Supp. 2d 136, 148 (D.D.C. 2008); *see Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) ("FOIA mandates a 'strong presumption in favor of disclosure[.]'"). Summary judgment for an agency is only appropriate if the agency proves it "fully discharged its obligations under the FOIA." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). If both parties seek summary judgment, each motion stands on its own. *See Huffman v. W. Nuclear, Inc.*, 486 U.S. 663, 674 n.11 (1988).

## ARGUMENT

### I. DHS has not met its burden to justify its use of Exemption 5.

Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.

§ 552(b)(5).[2] The Supreme Court has construed Exemption 5 to cover "only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Exemption 5 encompasses various statutory and common-law privileges. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800–01 (1984). Three of the most frequently invoked—which are relevant here—are the attorney work-product, attorney-client, and deliberative-process privileges. DHS has failed to meet its burden to sustain its use of these privileges.

**A. The attorney work-product privilege does not apply.**

The attorney work-product privilege protects documents that reflect an attorney's mental impressions, conclusions, opinions, and legal theories "prepared in contemplation of litigation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). The privilege is "limited" and "'does not extend to every written document generated by an attorney,'" even if it reflects legal analysis. *Id.* (citation omitted). "To invoke work product protection," an agency "must meet 'its burden of establishing that litigation was fairly foreseeable at the time' the documents were prepared." *Levin v. Nat'l Highway Traffic Safety Admin.*, No. 20-3236, 2026 WL 523017, at *11 (D.D.C. Feb. 25, 2026) (citation omitted). This means "[t]he lawyer preparing the document" at least "had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" *Id.* (citation omitted).

DHS invokes the attorney work-product privilege for Records 7 and 10. *See* Pl.'s SUMF ¶¶ 48 & 69; Pavlik-Keenan Decl. ¶ 15; DHS *Vaughn* Index at Lines 9 & 12. But despite the agency's supporting declaration and *Vaughn* index citing the privilege, DHS failed to offer any

[2] The threshold consideration for Exemption 5 is whether a record is an "inter-agency or intra-agency memorandum[] or letter[]." 5 U.S.C. § 552(b)(5). AFPF does not dispute that the records at issue qualify as "inter-agency or intra-agency" and "memorandums or letters," as those phrases have been interpreted by the judiciary. This includes DHS's reliance on the consultant-corollary doctrine for Record 14. Pl.'s SUMF ¶ 98; *see* Def.'s Br. at 10–11.

argument in its motion. *See* Def.'s Br. at 12–15. For this reason, the Court may enter judgment for AFPF on this issue. *See Judicial Watch of Fla. v. Dep't of Justice*, 102 F. Supp. 2d 6, 12 (D.D.C. 2000) (rejecting an exemption claim not filed in a motion for summary judgment and only raised in a reply brief).

Even if DHS did not waive the privilege, it has not established its essential prerequisite: the contemplation of litigation. *See* Pl.'s SUMF ¶¶ 50 & 70. To be sure, the agency claims Records 7 and 10 "contain the mental impressions, opinions, and legal analyses of attorneys for DHS." Pavlik-Keenan Decl. ¶ 15. But the work of these attorneys appears to have been in furtherance of standing up the Board. *See* DHS *Vaughn* Index at 12 ("[T]his document . . . was us[ed] to collect . . . thoughts and legal analysis about the roles and responsibilities of different offices and components in the misinformation, disinformation, and malinformation space."). There is no evidence of an attorney involved with creating Records 7 and 10 having had a "'subjective belief that litigation was a real possibility,'" or that it even would have been "'objectively reasonable' in the circumstances" to hold such a belief vis-à-vis the Board or another misinformation matter. *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 78–79 (D.D.C. 2003) (citation omitted).[3]

**B. The attorney-client privilege does not apply.**

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) (footnote omitted). Although the privilege is "not limited to communications made in the context of litigation or even a specific dispute," a covered record must still reflect an agency's request for "counsel sought on a legal matter," *Coastal States Gas Corp.*, 617 F.2d at 866, or "confidential information obtained

[3] With Record 10, DHS does not even specify it was created by an attorney. *See* DHS's *Vaughn* Index at Line 12.

from the client." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 538 F. Supp. 3d 124, 135 (D.D.C. 2021); *see In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1983) (An agency "must demonstrate with reasonable certainty that . . . the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure."). The privilege must be "'strictly confined within the narrowest possible limits consistent with the logic of its principle[.]'" *In re Lindsey*, 148 F.3d 1100, 1108 (D.C. Cir. 1998) (citation omitted).

DHS invokes the attorney-client privilege for the same records as the work-product privilege. *See* Pl.'s SUMF ¶¶ 48 & 69; Pavlik-Keenan Decl. ¶ 15; DHS *Vaughn* Index at Lines 9 & 12. But the agency has failed to "prove, through 'detailed and specific information,' that the withheld information falls within the domain of . . . [that] privilege." *Am. Immigration Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 79 (D.D.C. 2014) (citation omitted). Although DHS's declarant asserts that Records 7 and 10 "contain communications made in confidence for purposes of obtaining or providing legal advice," Pavlik-Keenan Decl. ¶ 15, she does not identify an agency client, the recipient of the document, or any confidential client information on which the analysis depended. Her description also contradicts, at least in part, the language found in the *Vaughn* index. Record 7 allegedly reflects the preparation of legal analysis, *see* DHS *Vaughn* Index at Line 9 ("A DHS attorney prepared the document to analyze DHS statutory authorities and provide legal advice[.]"), but Record 10 was only used to "collect . . . thoughts and legal analysis" about DHS's involvement in the "misinformation . . . space." DHS *Vaughn* Index at Line 12. Again, neither record appears to have been created at the request of the agency for the purpose of obtaining legal advice, *see* Pl.'s SUMF ¶¶ 51 & 71, nor is there any indication that these records depend on—or, if disclosed, would reveal—any client confidences.

*Doe v. Immigration & Customs Enforcement* is instructive. *See* No. 24-0617, 2025 WL 2779793 (D.D.C. Sept. 30, 2025). In that case, ICE failed to meet its burden to withhold "legal advice" that its attorneys had prepared because it did not show how such advice "'rested in significant and inseparable part on the client's"—that is, the agency's—"confidential disclosure" of some underlying information. *Id.* at *6. In short, there was no identifiable client confidence. This case is the same. *See* Pl.'s SUMF ¶¶ 52 & 72. DHS relies solely on a "conclusory assertion" that "the withheld documents" contain "'confidential legal advice.'" *Doe*, 2025 WL 2779793 at *7; *see id.* ("ICE's *Vaughn* index 'gives no indication as to the confidentiality of the information on which its withholdings are based,' its entries describing only 'the subject, source, and recipient of the legal opinion rendered[.]'"). That cannot carry the day.

DHS has also failed to provide any confirmation that it kept Records 7 and 10 confidential after their creation. *See Nat'l Press Club Journalism Inst. v. Immigration & Customs Enf't*, No. 18-2932, 2023 WL 9001337, at *13 (D.D.C. Dec. 28, 2023) ("[A] party invoking the attorney-client privilege must demonstrate a communication's 'confidentiality both at the time of the communication' and that such confidentiality has been 'maintained since.'"); *see also* Pl.'s SUMF ¶¶ 53 & 73. When ostensibly privileged information "is later shared with third parties," it is no longer protected. *Mead Data Cent., Inc.*, 566 F.2d at 252. This can happen if an agency circulates confidential information beyond those who are "'authorized to speak or act for the organization in relation to the subject matter of the communication.'" *Coastal States Gas Corp.*, 617 F.2d at 863 (citation omitted); *see id.* ("If facts have been made known to persons other than those who need to know them . . . they are [not] confidential."). This is important to consider with Records 7 and 10 because DHS indicates they were used more broadly within the agency in the preparation of the Board's charter. *See* DHS *Vaughn* Index at Lines 9 & 12.

Finally, DHS has not explained how Records 7 and 10 are distinct from "neutral, objective analyses" of DHS's statutory and regulatory authorities, including the working law and guidelines its components might follow in the misinformation space. *Coastal States Gas Corp.*, 617 F.2d at 863. This "distinction matters" because neutral and objective legal analysis about general matters "does not receive protection under the privilege." *Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 119 (D.D.C. 2021). As the agency itself contends, Records 7 and 10 explore a legal basis for the Board's existence, including "DHS statutory authorities . . . applicable to misinformation." DHS *Vaughn* Index at 9. The mere identification and collection of such generalized legal information should not be privileged.

**C. The deliberative-process privilege does not apply.**

To withhold a record under the deliberative-process privilege, an agency must show it is "both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A record is "predecisional" when it is generated "antecedent to the adoption of an agency policy." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (cleaned up and citation omitted). It is "deliberative" when it forms a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters," *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975), thereby reflecting the "give-and-take of the consultative process" typical of agency decision-making. *Coastal States Gas Corp.*, 617 F.2d at 866. Records are not privileged if they "neither make recommendations for policy change nor reflect internal deliberations on the advisability of any particular course of action." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010). The "key question" should be "whether disclosure would tend to diminish candor within an agency."

*People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 298 (D.D.C. 2007) (cleaned up and citation omitted).

**1. DHS's use of the privilege is overbroad and its description of the withheld records is not detailed enough.**

DHS mischaracterizes the privilege inquiry. Citing a district-court case from 1984, the agency claims it should be afforded "'considerable deference . . . as to what constitutes . . . part of the agency give-and-take—of the deliberative process—by which the decision itself is made.'" Def.'s Br. at 6–7 (citing *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984)). Not so. *Chemical Manufacturers* "merely held that deference was due 'while the decisionmaking process is in progress.'" *Protect Democracy Project, Inc. v. Dep't of Energy*, 330 F. Supp. 3d 515, 528 (D.D.C. 2018). In other words, it only suggested deference to an agency's "'plausibl[e] demonstrat[ion]'" that deliberative processes were still ongoing with a view to some final "policy judgment." *Id.* (citation omitted). The court offered no generally applicable principle about judicial scrutiny of an agency's justifications for the deliberative-process privilege.

In truth, an "agency bears the burden of showing that the privilege properly applies." *Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 26 (D.D.C. 2019). "This burden does not shift even when the requester files a cross-motion for summary judgment." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017). The agency must always offer a "relatively detailed justification." *Mead Data Cent., Inc.*, 566 F.2d at 251. It "cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (citation omitted).

With many of the records in dispute, DHS's argument depends on abstract descriptions of records that have largely been withheld in full. Very little about the agency's processing of these

records, or the way it has described them in its *Vaughn* index, suggests DHS has met its burden. Consider, first, the likelihood that DHS overapplied the deliberative-process privilege (and other exemptions).[4] As addressed elsewhere, *see infra* at pp. 28–30, courts often reject categorical application of the deliberative-process privilege as it tends to conflate "deliberative" materials with "purely factual, investigative matters." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 89 (1973). Neither DHS's supporting declaration nor its *Vaughn* index provides adequate indication that "factual segments" from the eighteen records withheld under the privilege, *see* Mulvey Decl. Ex. 5–15 & 18–24, are so "intertwined with the policy-making process" as to render line-by-line segregation futile. *Ryan v. Dep't of Justice*, 617 F.2d 781, 791 (D.C. Cir. 1980). "[F]or *each* entry in its index" DHS was "required to 'specify in detail which portions of the document are disclosable and which are allegedly exempt.'" *Wilderness Soc'y v. Dep't of the Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (cleaned up and citation omitted). It did not do this.

The specificity of DHS's description of the records and its grounds for withholding leave much to be desired. The agency has not always provided the basic information needed to ensure each record was "prepared in order to assist an agency decisionmaker in arriving at his decision rather than to support a decision already made," *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), or to establish that the record contributed to the "give-and-take of the deliberative process." *Vaughn*, 523 F.3d at 1144. Such information should have included the "role played" by a document in the deliberative process, "the nature of the decisionmaking authority vested" in the person issuing the document, and "the positions in the chain of command of the parties to the document." *Hardy*, 243 F. Supp. 3d at 168.

---

[4] In one instance, DHS processed duplicate records differently. Pl.'s SUMF ¶ 117.

Here, with respect to identifying people involved in the creation and use of the records at issue, DHS refers only to "federal employees," "multiple offices," an "attorney," a "contractor," and an undifferentiated "individual." DHS *Vaughn* Index at 3, 9, 16, 18. In many instances, it has focused on the alleged deliberative character of the records, or its claims about foreseeable harm, rather than the agency employees implicated and their relationships to each other. *See* DHS *Vaughn* Index at Lines 4–8, 11–13, 19–22. This impedes the Court's review. Judge Lamberth, in *Transgender Law Center v. Immigration & Customs Enforcement*, underscored this problem:

> [T]he Court is unable to identify the author and recipient of each email, because ICE merely buckets all emails as "amongst the Enforcement and Removal Operation and ICE Health Service Employees . . . for the purpose of making recommendations to senior Enforcement and Removal Operation and Ice Health Service Corps employees and officers." . . . Although ICE insists that this description "clearly identifie[s] the authors and recipients," this Court cannot draw anything from that description. Are all emails one-way, from junior to senior? Which office is the originator, and which office is on the receiving end? These questions are left unanswered by ICE's description. For ICE to prevail on summary judgment, the Court must be able to assess "the nature of the decisionmaking authority vested in the document's author and recipient." . . . This shortcoming in ICE's descriptions overlaps with Plaintiffs' two other challenges; that ICE has failed to provide the requisite specificity in their description of a large set of withheld emails, and that a blanket statement of foreseeable harm—essentially restating the rationale for the deliberative-process exemption in the first place—is insufficient to invoke the deliberative process privilege.

775 F. Supp. 3d 131, 154 (D.D.C. 2025).

It also bears noting that DHS's labeling of records—regardless of whether those labels were contemporaneously affixed when a record was created—are not dependable guides. The agency has publicly released final versions of records, such as the Board's charter and a signed secretarial action memo, that are still clearly marked "DELIBERATIVE/DRAFT." Pl.'s SUMF ¶¶ 3 & 32; *see* Mulvey Decl. Ex. 2 & 25. But it insists other records are pre-decisional drafts that either bear no (or inconsistent) relevant markings—*see, e.g.*, Pl.'s SUMF ¶¶ 24, 30, 36, 41, 67, 78—or that have the label "DRAFT" stricken out entirely. Pl.'s SUMF ¶ 112.

**2. DHS has not shown all the records are "predecisional."**

To satisfy the privilege's "predecisional" requirement, DHS must show how each record was "prepared . . . to assist an agency decision maker in arriving at his decision." *Petroleum Info. Corp.*, 976 F.2d at 1434 (cleaned up and citation omitted). DHS attempts this largely by relying on its claim that most of the records are "drafts." *See* Def.'s Br. at 7–8. But "drafts are not presumptively privileged." *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004); *see Arthur Andersen & Co. v. Internal Revenue Serv.*, 679 F.2d 254, 257 (D.C. Cir. 1982) ("The designation of the documents here as 'drafts' does not end the inquiry[.]"). DHS must still prove how *each* draft is predecisional *and* deliberative. It "must identify the 'who,' 'what,' 'where,' and 'how' for each draft," while also explaining whether it was either "(1) adopted formally or informally, as the agency position on an issue, or (2) used . . . in its dealings with the public." *Transgender Law Ctr.*, 775 F. Supp. 3d at 154 (cleaned up and citations omitted). DHS's *Vaughn* index could have provided more fulsome detail in this regard.

DHS's focus on whether a record is a "draft" also distracts from considering if it was actually predecisional.[5] The decisions or decision-making processes identified in the agency's *Vaughn* index tend to be general. *See* Def.'s Br. at 7–8. Some entries in the index almost avoid specifying *any* discrete decision point. *See, e.g.*, DHS *Vaughn* Index at Lines 4 ("draft document providing a summary of the concept of operations"), 8 ("initial outline of the author's thinking about potential roles and responsibilities" for the Board), 9 ("document discussing DHS authorities concerning misinformation"), 12 (document used by an employee to "collect their thoughts and

[5] DHS claims it has "refer[red] the Court and Plaintiff to the final versions or publicly released information when available." Def.'s Br. at 8. Not so. Although DHS does point to an online reading room that contains a copy of the Board's charter, as well as a January 2022 secretarial action memo, the agency itself never suggests any of the records at issue have been publicly released in some "final" form. *See* DHS *Vaughn* Index at Lines 5, 8, 9 (mentioning the Board's charter); DHS *Vaughn* Index at Line 12 (linking directly to a February 2022 advisory bulletin). The closest it gets to doing so is a press release that developed out of an email chain. *See* DHS *Vaughn* Index at Line 22.

legal analysis"), 16 (list of "news articles discussing publicly available information"), 21 ("analysis of DHS efforts in the event specific actions take place"). At least one record appears to be a *final* document, which has been electronically signed by its authors. Pl.'s SUMF ¶ 30; *see* Mulvey Decl. Ex. 7. Curiously, when DHS wants to provide details about the relevant decision-making process, it knows how to do so. *See, e.g.*, DHS *Vaughn* Index at Line 22 ("The email chain contains multiple versions of a notice that the Department was considering releasing to the public."). Overall, though, further specificity was needed. *See S. of P.R. ex rel. Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (rejecting use of the privilege when an agency's justification "consist[ed] almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter.").

A small number of records may not qualify as predecisional for another reason. Although a record may be "predecisional at the time it is prepared, it can lose that status, if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp.*, 617 F.2d at 866. In four instances, this sort of adoption could disqualify records from being withheld:

- Record 3 was attached to, referenced, and thereby incorporated into a final (now publicly available) secretarial action memorandum. Pl.'s SUMF ¶ 34.
- Portions of Record 10 may have been incorporated into a publicly available advisory bulletin. Pl.'s SUMF ¶ 74.
- Portions of Record 18, insofar as they coincide with the final "Ukraine MDM Playbook," were attached to, referenced, and thereby incorporated into the same action memorandum as Record 3. Pl.'s SUMF ¶ 113; *see generally* Pl.'s SUMF ¶ 112 (noting the "DRAFT" label has been stricken out).
- Record 20 contains an attributable statement from Secretary Mayorkas, which he provided to DHS inferiors, who then "sent . . . [it] to the White House" and "hope[d] to deploy it to reporters soon." Pl.'s SUMF ¶¶ 121–23.

These records should either be released or reprocessed such that any smaller portions that were adopted are produced to AFPF.

### 3. DHS has not shown all the records are "deliberative."

"A record is not protected merely by virtue of being a relevant predecisional communication." *Cause of Action Inst. v. Dep't of Justice*, 330 F. Supp. 3d 336, 353 (D.D.C. 2018). "The deliberative-process privilege does not shield . . . the simple 'fact that a meeting is scheduled to take place' and 'the purpose of that meeting.'" *Id.* at 354 (citation omitted). "Extending the privilege to encompass every communication that relates in some way to an agency's predecisional correspondence would fly in the face of the general directive that the [FOIA]'s exemptions be 'narrowly construed.'" *Id.* (citation omitted). A document must "reflect[] an exercise of discretion and judgment calls," *Ancient Coin Collectors Guild*, 641 F.3d at 513 (cleaned up and citation omitted), exhibiting the "give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866. "Simple relevance to the policy-making process" cannot "bring a document within the ambit of Exemption 5." *Sierra Club v. U.S. Fish & Wildlife Serv.*, 523 F. Supp. 3d 24, 34 (D.D.C. 2021).

DHS's description of the deliberative quality of the records at issue tends towards ambiguity and boilerplate. *See* Pavlik-Keenan Decl. ¶ 11. Some records, which may reflect the work of individual employees, still do not seem to make "recommendations" on "legal or policy matters" intended to guide decisionmakers. *Vaughn*, 523 F.2d at 1144. Records 7 and 10, for example, reflect the consideration of legal authorities potentially relevant to the Board and DHS's involvement in the misinformation space. *See* DHS *Vaughn* Index at Lines 9 & 12.[6] But it is not clear what deliberative recommendations they might contain.

There are other examples. Record 4, the "tabletop exercise" slide deck, does not seem to wholly implicate "internal deliberations on the advisability of any particular course of action" to

[6] DHS has also withheld these records under the attorney privileges. *See supra* at 5–8.

be undertaken by the agency. *Pub. Citizen, Inc.*, 598 F.3d at 875. Rather, it apparently served as a sort of war game about hypothetical misinformation crises and, in this respect, it likely contains non-deliberative content, such as scenario facts or discussion prompts. *See* DHS *Vaughn* Index at Line 6. Record 6 is "not addressed to any specific DHS personnel or DHS office" and contains "an initial outline of the author's thinking" about the structure of the Board. DHS *Vaughn* Index at Line 8. And Records 15 and 16 contain non-deliberative comments about the "tempo or timing" of a presentation. *See* DHS *Vaughn* Index at Lines 17–18.

DHS's withholding of Record 14 is especially questionable. *See* Def.'s Br. at 11. On DHS's telling, this record "contains analytical and deliberative information about narratives" concerning the Board. Pavlik-Keenan Decl. ¶ 16. In fact, it appears to be a compilation of "news articles," DHS *Vaughn* Index at 16, prepared in the "normal course of business" by a contractor. Pl.'s SUMF ¶ 100; *see* Mulvey Decl. Ex. 17. The record does "not emphasize, comment upon, or characterize events or facts." *Judicial Watch, Inc. v. Dep't of State*, 241 F. Supp. 3d 174, 185 (D.D.C. 2017). It "simply . . . pass[es] on information . . . without any indication that the information should prompt further action or bear upon a decision under review." *Id.*; *see* Mulvey Decl. Ex. 17 ("[L]et us know if there is anything specific we should provide."). DHS still insists the record is privileged as it reflects a "thoughtful approach to compiling the exact narratives." Def.'s Br. at 11. But the record provides "no insight into the agency's position or anything else . . . involve[ing] the formulation or exercise of . . . policy-oriented judgment" or the "process by which policy is formulated." *Cause of Action Inst.*, 330 F. Supp. 3d at 353 (cleaned up).

**4. DHS failed to offer any argument for withholding Record 8.**

The Court should reject DHS's withholding of Record 8. The substantive content of this record has been redacted under Exemption 5, Pl.'s SUMF ¶¶ 61–63, but the agency fails to offer

any justification for that withholding in its supporting declaration or *Vaughn* index. Pl.'s SUMF ¶ 64. Instead, it addresses only Exemption 6. *See* DHS *Vaughn* Index at Line 10; *see infra* at pp. 17–19. "It need scarcely be said that the Court cannot affirm Defendant's withholding of a record it never even acknowledges. . . . As the D.C. Circuit has emphasized, '[t]here is no excuse for submitting a *Vaughn* index that contains errors, even minor ones.'" *Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, 521 F. Supp. 3d 64, 81 (D.D.C. 2021).

## II. DHS has not met its burden to justify its use of Exemption 6.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Records may only be withheld when both elements of this exemption are satisfied. *First*, "information must be contained in personnel, medical, or 'similar' files." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982).[7] *Second*, "the information must be of such a nature that its disclosure would constitute a *clearly unwarranted invasion* of personal privacy." *Id.* (emphasis added). Privacy interests are then balanced "against the public interest (namely, 'the basic purpose of the [FOIA],' which is 'to open agency action to the light of public scrutiny')." *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

As a preliminary matter, it is important to clarify which records are at issue. DHS has withheld portions of four records under Exemption 6. *See* Pl.'s SUMF ¶¶ 57 (Record 8), 82–83 (Record 12), 89–90 (Record 13), 119 (Record 20); *see* DHS *Vaughn* Index at Lines 10, 14–15, 22. Records 12 and 13 do not require the Court's attention at present because the parties have agreed to a plan for their reprocessing. *See* Pl.'s SUMF ¶¶ 81–84, 88–90.[8] If DHS fails to fulfill its obligations pursuant to that agreement, AFPF reserves the right to move to enforce the agreement

---

[7] AFPF does not challenge whether DHS has satisfied this first element.
[8] DHS reproduced Record 13 on September 11, 2026. Pl.'s SUMF ¶ 92.

or, alternatively, to file another motion for summary judgment. As for Record 20, AFPF does not challenge the agency's use of Exemption 6. Pl.'s SUMF ¶ 120. This leaves Record 8 and, specifically, the name and contact information of a Senate staffer who reached out by email to Nina Jankowicz to discuss the Board. Pl.'s SUMF ¶¶ 57–58; *see* Mulvey Decl. Ex. 12.[9]

The Senate staffer's details should be released. Federal employees do not enjoy the same privacy protections as non-government individuals. More importantly, "[t]he disclosure of names"—and, by extension, titles or professional affiliations—"is not inherently and always a significant threat to . . . privacy[.]" *Sai v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 262 (D.D.C. 2018). DHS devotes little attention to this matter and focuses instead on generic claims of "unwarranted harassment" and the fact that the staffer is not a "public figure." Pavlik-Keenan Decl. ¶ 20; *see* DHS *Vaughn* Index at Line 10. But Exemption 6 does not constitute a *per se* rule against the disclosure of government-employee information. Such information is typically withheld only if "release will endanger a staff member's safety," *Pinson v. Dep't of Justice*, 177 F. Supp. 3d 56, 83 (D.D.C. 2016), and courts consistently scrutinize whether there is a genuine threat of harm. *See, e.g.*, *Lawyers' Comm. for Civil Rights Under Law v. Dep't of Justice*, No. 18-0167, 2020 WL 7319365, at *33 (D.D.C. Oct. 16, 2020); *Clemmons v. U.S. Army Crime Records Ctr.*, No. 05-2353, 2007 WL 1020827, at *6 (D.D.C. Mar. 20, 2007).

Because DHS has not "satisf[ied] the first step of its burden to show that Exemption 6 applies," the Court need "not proceed to . . . step two." *Human Rights Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 716 (D.C. Cir. 2025); *see Transgender Law Ctr.*, 775 F. Supp. 3d at 158 ("[A]ll ICE has offered is 'a conclusory declaration that all non-leadership lower level employees . . . might be subject to harassment if their names were revealed,' which is insufficient to justify

[9] AFPF does not challenge DHS's use of Exemption 6 to withhold Ms. Jankowicz's email address. Pl.'s SUMF ¶ 60.

withholding."). Even then, DHS's argument on the balancing of the private and public interests in disclosure falls short.

There is an acknowledged public interest in "understanding the role played by different individuals" within the government who collaborate on official business. *Hunton & Williams LLP v. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 259 (D.D.C. 2017). It does not matter that the employee works for Congress. *See* Mulvey Decl. ¶ 31. If anything, the fact that DHS has withheld the substance of this staffer's email under Exemption 5 reinforces the importance of releasing identifying information. Pl.'s SUMF ¶ 61; *see supra* at pp. 16–17. Knowing the interbranch participants in DHS's ostensible policy deliberations could "shed light on whether the records were appropriately withheld pursuant to the deliberative process privilege." *Lawyers' Comm. for Civil Rights Under Law*, 2020 WL 7319365 at *33. And "this kind of information can serve as the basis for further investigative work—and subsequent FOIA requests—and therefore ha[ve] a cumulative impact on public insight into agency conduct." Mulvey Decl. ¶ 31; *cf. Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 15 (D.C. Cir. 2011) ("[T]his court takes derivative uses into account in evaluating the impact of disclosure on the public interest[.]").

One final point: Even if DHS has properly withheld the *name* of the Senate staffer, its redaction is still overbroad. It must release the domain name associated with that staffer's email account, which would reveal the office for which the staffer worked. *See* Pl.'s SUMF ¶¶ 57–58. "[E]mail domains cannot be withheld pursuant to Exemption 6 because 'email domains are shared by all employees'" within an agency or, by analogy, within a congressional office. *Transgender Law Ctr.*, 775 F. Supp. 3d at 157 (citation omitted).

### III. DHS has not met its burden to justify its use of Exemption 7(E).

Exemption 7(E) is used to withhold records "compiled for law enforcement purposes, but only to the extent that the production of such . . . records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). DHS has withheld two records under this exemption: Records 4 and 10. *See* Pl.'s SUMF ¶ 35; DHS *Vaughn* Index at Line 12; *see also* Mulvey Decl. Exs. 8 & 14.[10] DHS's withholdings should fail.

To start, DHS has not satisfied Exemption 7's threshold requirement. To qualify for withholding, a record must have been "created, gathered, or used," *Pub. Emps. for Envtl. Responsibility v. U.S. Sec., Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014), for "adjudicative or enforcement" efforts pertaining to "civil or criminal federal laws." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88–89 (D.C. Cir. 1984). This initial inquiry focuses on "how and under what circumstances the requested files were compiled." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176–77 (D.C. Cir. 2022) (cleaned up and citations omitted).

Instead of focusing on the context and purpose for which Records 4 and 10 were created, DHS tries to shift the Court's attention to the agency's general responsibility for administering various immigration and national-security laws. *See* Pavlik-Keenan Decl. ¶¶ 25 (citing 8 U.S.C. § 1103) & 26 (citing 6 U.S.C. § 211, the Homeland Security Act, and a pair of executive orders). But "not every document compiled by a law enforcement agency is compiled for a law enforcement purpose." *100Reporters LLC v. Dep't of Justice*, 248 F. Supp. 3d 115, 159 (D.D.C.

[10] Record 10 bears no indication or marking that it was withheld under Exemption 7(E). Pl.'s SUMF ¶ 75. It is instead marked as "Pre-Decisional//Deliberative//Attorney-Work Product" and "(b)(5)." Mulvey Decl. Ex. 14.

2017). It matters less whether there is "information" in the records that "relates" to "investigation and techniques," Pavlik-Keenan Decl. ¶ 26, and more why the records were created at all.

Records 4 and 10 appear to have been created in furtherance of the Board's chartering and its planned activities in the misinformation space. *See* DHS *Vaughn* Index at Line 6 ("tabletop exercise designed to test different approaches DHS was considering in its draft Playbook" for countering misinformation in Ukraine) & Line 12 ("document discussing DHS authorities concerning misinformation" intended to "collect thoughts" about "roles and responsibilities" for the Board). DHS has not established that either record was intended to serve the agency's law-enforcement functions, let alone a specific investigation or prosecution. Since DHS "has not offered any proof regarding the purposes of the[se] records," it cannot receive deferential treatment and should not be expected to provide anything "less than exacting proof" in satisfying Exemption 7's threshold, which it has not done. *Transgender Law Ctr.*, 775 F. Supp. 3d at 155–56.

Turning to the technical requirements for Exemption 7(E), DHS must make two additional showings: (1) that Records 4 and 10 disclose either "techniques and procedures" or "guidelines" for law-enforcement investigations or prosecutions, 5 U.S.C. § 552(b)(7)(E); and (2) that disclosure could reasonably risk circumvention of the law. As to the first, DHS fails to offer adequately specific details about the actual procedures in question. Admittedly, it refers to "deliberations" about "potential terrorist threats and potential courses of action," as well as "weaknesses" in "law enforcement efforts" targeting "criminal or terrorist activity." Pavlik-Keenan Decl. ¶ 28. It also gestures at "guidelines and techniques used to address terrorist and cyber-attacks and developing plans for immigration emergencies," including the management of "border crossings" and development of "intelligence reports." Pavlik-Keenan Decl. ¶¶ 29–30. But such generalities are not enough. This is especially so with Record 10, for which DHS relies

heavily on a generic claim about the relevance of the Office of Intelligence and Analysis. *See* DHS *Vaughn* Index at Line 12. "An agency cannot . . . offer[] a 'near-verbatim recitation of the statutory standard' that does nothing to explain 'what procedures are at stake.'" *Advancement Project v. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 146 (D.D.C. 2021). DHS's supporting declaration and *Vaughn* index contain "generic, vague, and conclusory representations" that "do not permit" this Court "to 'deduce [anything] of the nature of the techniques in question.'" *Kolbusz v. Fed. Bureau of Investigation*, No. 17-0319, 2021 WL 1845352, at *24 (D.D.C. Feb. 17, 2021).

Finally, DHS must show "logically" how release would "risk circumvention of the law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011). But DHS's *Vaughn* index only addresses Record 10 on this point, *see* DHS *Vaughn* Index at Line 12, and its declarant seems to have the same record in mind. *See* Pavlik-Keenan Decl. ¶ 30. DHS's argument also presupposes that both records contain meaningful information about law-enforcement techniques. That Record 10 was "used to prepare" a public advisory bulletin undercuts the strength of that presupposition. DHS *Vaughn* Index at Line 12. Nothing in the bulletin comes close to reflecting the sort of information protected by Exemption 7(E).[11] Given the role these records played in the Board's efforts to address misinformation, it strains credulity on the current evidentiary record to believe either one could allow an individual "to take proactive steps to counter operational actions taken by" DHS's component agencies. Pavlik-Keenan Decl. ¶ 30; *see* Def.'s Br. at 22–23.

## IV. DHS has not satisfied its burden under the "foreseeable harm" standard.

The FOIA requires an agency to release any record that does not fall under an enumerated exemption. Even after an agency establishes the technical prerequisites for the use of an

[11] Dep't of Homeland Sec., "Summary of Terrorism Threat to the U.S. Homeland," Nat'l Terrorism Advisory Sys. Bulletin (Feb. 7, 2022), https://www.dhs.gov/ntas/advisory/national-terrorism-advisory-system-bulletin-february-07-2022. The Court may take judicial notice of this document and its contents. *See* Fed. R. Evid. 201.

exemption, however, it must show it "reasonably foresees that disclosure would harm an interest protected by [that] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). This standard imposes an "independent and meaningful burden on agencies" that requires articulating "both the nature of the harm from release and the link between the *specific* harm and *specific* information contained in the material withheld." *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up and citations omitted).

An agency may not "rely on mere speculative or abstract fears." *Id.* (cleaned up and citation omitted). "[B]oiler plate language" will miss the mark. *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019). And "general explanations of a possibility of a 'chilling effect' fall short of articulating 'a link between the specified harm and the specific information contained in the material withheld.'" *Id.* (citation omitted). Finally, an agency's analysis must be "context-specific," *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020), attending to the "particularized context" and content of the records, as well as the underlying "agency action." *See Reporters Comm. for Freedom of the Press*, 3 F.4th at 370–72.

To construe the foreseeable-harm standard in so loose a fashion as to admit "self-evident" harms—that is, harms that require no additional argument from an agency apart from its justification for invoking an exemption or privilege—would render the statutory text meaningless. *See Black Hills Clean Water All. v. U.S. Forest Serv.*, No. 20-5034, 2022 WL 2340440, at *12 (D.S.D. June 29, 2022). Courts must "give effect . . . to every clause and word of a statute." *Ibrahim v. Dep't of State*, 311 F. Supp. 3d 134, 140 (D.D.C. 2018) (citation omitted). Indeed, "one of the most basic interpretive canons" is "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).

### 1. DHS has not shown foreseeable harm with the deliberative-process privilege.

With respect to records withheld under the deliberative-process privilege, DHS proffers the generic boilerplate that courts consistently reject. *See* Def.'s Br. at 9. Ms. Pavlik-Keenan's declaration, for example, neglects any particularized discussion and relies on four categorical claims concerning a "chilling effect," "harm" to the agency's "ability to prepare for potential scenarios or crisis situations," "impact[s]" on its employees' ability "to plan and analyze questions and issues in writing," and finally, the danger of "mislead[ing] the public." Pavlik-Keenan ¶¶ 12–14. The second and third of these supposed harms are just restatements of the first.

DHS's "nebulous articulations of harm are insufficient." *Judicial Watch, Inc. v. Dep't of Justice*, No. 17-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). The agency "failed to identify specific harms" beyond generic "chill." *Id.* "A perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information . . . will not suffice." *Transgender Law Ctr.*, 775 F. Supp. 3d at 153 (cleaned up and citation omitted). DHS also failed to connect its asserted harms "in any meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Judicial Watch, Inc.*, 2019 WL 4644029, at *5. DHS does not even consider the fact that the Board's charter has been rescinded, Pl.'s SUMF ¶ 8, and its very establishment deemed unlawful. Mulvey Decl. ¶ 4.

### 2. DHS has not shown foreseeable harm with the attorney privileges.

Although there is no controlling circuit precedent addressing what the foreseeable-harm standard means in the context of the attorney-client and attorney work-product privileges, there is little reason to adopt DHS's notion of a "self-evident" harm. *See* Def.'s Br. at 12 & 15. Even with

the attorney privileges, "courts have recognized that it is not enough to simply establish that the privilege applies." *Doe*, 2025 WL 2779793 at *7.

DHS's foreseeable-harm argument must fail because it appeals only to abstract harms, such as the "chilling effect" that comes from invading the zone of privacy protected by the work-product privilege. Pavlik-Keenan Decl. ¶ 15; *see* DHS *Vaughn* Index at Lines 9 & 12. The agency also references preserving the "confidentiality" of attorney-client communications and ensuring "complete and effective advice," including the "willingness of clients to be fully candid . . . [and] attorneys to provide comprehensive advice." Pavlik-Keenan Decl. ¶ 15. Something more was needed. An "allegation that . . . [a record], if disclosed, would reveal confidential, privileged material"—thus impairing the sort of policy interests undergirding the attorney privileges—"does nothing more than bring that information within the gambit of the attorney-client privilege" in the first instance. *Black Hills Clean Water All.*, 2022 WL 2340440 at *12. Something more is needed, and DHS offers nothing.

None of DHS's purported "harms" accounts for the context surrounding the creation and use of Records 7 and 10, such as their "age, content, and character." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105 (D.D.C. 2019); *cf.* OIP Guidance: Applying the "Foreseeable Harm" Standard Under Exemption 5, FOIA Update, vol. XV, no. 2 (Jan. 1, 1994), *available at* https://www.justice.gov/archives/oip/blog/foia-update-oip-guidance-applying-forseeable-harm-standard-under-exemption-five. DHS should also have considered that the Board was "terminated," its charter "rescinded," Pl.'s SUMF ¶ 8, and its creation deemed unlawful. Mulvey Decl. ¶ 4; Mulvey Decl. Ex. 1.

The cases cited by DHS do little to counsel against AFPF's position. If they have any relevance at all, their usefulness depends on their persuasive force. *See Jewish War Veterans of*

*the U.S., Inc. v. Mattis*, 266 F. Supp. 3d 248, 253 (D.D.C. 2017). In *Ecological Rights Foundation v. Environmental Protection Agency*, Chief Judge Howell's view that, "[w]hen invoking the attorney-client privilege . . . an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm," is pure *obiter dictum*, as the case did not even involve an attorney privilege. No. 19-0980, 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021). *Cayuga Nation v. Department of the Interior* is no different. Without discussion of the evidentiary record or the parties' arguments, Judge Jackson stated that "harm is apparent" and cited *Ecological Rights Foundation*. No. 20-2642, 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022). In *Americans for Prosperity Foundation v. Centers for Medicare & Medicaid Services*, Judge Nichols permitted the agency to file an *ex parte* declaration to demonstrate harm but then declined to decide how robust the standard should actually be. No. 21-2021, 2024 WL 578955, at *3 (D.D.C. Feb. 13, 2024).

Finally, DHS identifies "[f]our factors" it insists "buttress" its conclusion that foreseeable harm is self-evident when the attorney privileges apply. *See* Def.'s Br. at 13–14. Each of these "factors" is divorced from the statutory text and FOIA jurisprudence more broadly. *First*, DHS emphasizes the centrality of confidential attorney communications in our nation's legal system. *See* Def.'s Br. at 13–14. But the idea that robust application of the foreseeable-harm standard would dissuade agency personnel from seeking legal counsel is hyperbole. Government attorneys "are surely sophisticated enough to know that" Exemption 5 is discretionary and the "attorney/client . . . privilege[] can be [effectively] waived[.]" *N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100, 116–17 (2d. Cir. 2014). The General Counsel will not "lack for clients." *Id.* at 117.

*Second*, DHS protests the attorney-client privilege enjoys an "ancient lineage." Def.'s Br. at 14. This is irrelevant. The attorney-client privilege plays a different role under the FOIA than in civil litigation. FOIA exemptions are discretionary, not mandatory, *see Chrysler Corp. v.*

*Brown*, 441 U.S. 281, 293 (1979), and the privileges used with Exemption 5 are only "rough analogies" to the privileges applied in discovery. *Mink*, 410 U.S. at 86.

*Third*, and relatedly, DHS's argument about the difference between qualified and absolute privileges is neither here nor there. *See* Def.'s Br. at 14. The Supreme Court has held the key question for purposes of Exemption 5 is whether information is "routinely" privileged. *Weber Aircraft Corp.*, 465 U.S. at 799. The foreseeable-harm standard is analytically distinct from the requirement that an agency show how a privilege "routinely" applies to certain records.

*Fourth*, DHS claims "'Congress was particularly concerned with . . . the deliberative process privilege'" when it codified the foreseeable-harm standard. Def.'s Br. at 14. This is half true. Certainly, Congress was concerned about remedying overreliance on the deliberative-process privilege. But it also intended the 2016 FOIA Amendments to curb the improper use of *all* discretionary exemptions. *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 104. This would include Exemption 5 when used with "legal privileges." H.R. Rep. No. 114-391 at 9 (2016).

**3. DHS has not shown foreseeable harm with Exemption 6.**

Nothing precludes the foreseeable-harm standard from applying to Exemption 6. As the D.C. Circuit has explained, "[w]hether under Exemption 6, or alternatively under the Improvement Act, 'speculative or abstract fears' . . . do not establish a foreseeable harm sufficient to justify withholding . . . names" or related information. *Human Rights Def. Ctr.*, 126 F.4th at 716–17. Yet speculative fear of harassment is all that DHS has offered with Record 8.

**4. DHS has not shown foreseeable harm with Exemption 7(E)**

As DHS's own authority explains, *see* Def.'s Br. at 23, "[w]hat an agency must do to show foreseeable harm under Exemption 7(E) is an open question." *Reporters Comm. for Freedom of the Press*, 567 F. Supp. 3d at 128. Admittedly, "[t]he exemption's text . . . already forces the

agency to show some risk of harm." *Id.* But the statute's "freestanding foreseeable harm requirement" nonetheless requires something more than "general explanations and boilerplate language." *Id.* In this regard, the "context and purpose" of the records in dispute matter. *Id.* (internal quotation marks omitted). Yet DHS did not identify any harm beyond what was required to invoke Exemption 7(E), and it failed to contextualize its predictions of harm in light of the termination of the Board and the agency's current misinformation activities, if any.

## V. DHS did not segregate out and release non-exempt portions of responsive records.

The failure to carefully review responsive records on a line-by-line basis violates the explicit mandate of the FOIA, which obligates an agency to release "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see id.* § 552(a)(8)(A)(ii)(II). An adequate segregability analysis is so vital to the FOIA's broad mandate of disclosure that a court has "an affirmative duty to consider the issue *sua sponte*." *See Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). A "court that simply approves the withholding of an entire document without entering a finding on segregability . . . errs." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (cleaned up and citation omitted).

DHS has failed to demonstrate the reasonableness of its efforts to release non-exempt portions of records. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973) ("[I]t is vital that the agency specify in detail which portions of the document[s] are disclosable and which are allegedly exempt."). The agency's index does not even address segregability on a record-by-record basis. A "submission that does not do that does not even qualify as a '*Vaughn* index.'" *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1210 (D.C. Cir. 1992), *abrogated on other grounds*, *Milner v. Dep't of the Navy*, 562 U.S. 562 (2011).

DHS's declarant hardly makes up the difference. Ms. Pavlik-Keenan offers only a brief, two-sentence explanation of the agency's segregability efforts, which she elides with passing mention of DHS's alleged satisfaction of the foreseeable-harm standard. *See* Pavlik-Keenan Decl. ¶¶ 34–35. This is inadequate. *See Cause of Action Inst.*, 521 F. Supp. 3d at 96 ("All [the agency] offers on the matter is its conclusory assertion that it 'has conducted a line-by-line review . . . [and] segregated and released all reasonably segregable, non-exemption information.'"). "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Cent., Inc.*, 566 F.2d at 261. Mere allegations of complying, absent some showing that "explain[s] 'in detail which portions'" of records "'are disclosable and which are allegedly exempt,'" cannot win the day. *Edmonds Inst. v. Dep't of the Interior*, 383 F. Supp. 2d 105, 108 (D.D.C. 2005) (citation omitted). They certainly do not trigger any kind of "presumption"—as DHS terms it, *see* Def.'s Br. at 23–24—that relieves DHS of providing adequate detail to facilitate meaningful review by AFPF and the Court.

The lion's share of records in this case has either been withheld in full—Pl.'s SUMF ¶¶ 35 (Record 4), 77 (Record 11), 101 (Record 15), 104 (Record 16), 107 (Record 17)—or nearly in full, apart from titles or document dates. *See* Pl.'s SUMF ¶¶ 23 (Record 1), 26 (Record 2), 40 (Record 5), 43 (Record 6), 48 (Record 7), 66 (Record 9), 69 (Record 10), 93 (Record 14), 111 (Record 18), 115 (Record 19). The remaining records, for the most part, are heavily redacted. *See* Pl.'s SUMF ¶¶ 29 (Record 3), 61 (Record 8), 119 (Record 20). Throughout its moving papers, DHS never even hints at its heavy-handedness with the redaction tape. The sheer amount of redaction is enough to "'warrant a belief by a reasonable person' that the agency failed to comply with its [segregability] obligation." *Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71

F.4th 1051, 1058 (D.C. Cir. 2023) (citation omitted); *cf. Cause of Action Inst.*, 521 F. Supp. 3d at 96 (the "basic reality" of the number of records "redacted in full" is a "red flag").

DHS's decision to withhold most of the responsive records under Exemption 5, in conjunction with the deliberative-process privilege, is problematic for another reason, too. Courts often reject categorical application of Exemption 5 with the "deliberative or policy-making process[]" privileges because it blurs the line between "deliberative" materials, on the one hand, and "purely factual, investigative matters on the other." *Mink*, 410 U.S. at 89; *see Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[A]n agency cannot justify withholding an entire document simply by showing it contains some exempt material[.]"). Neither DHS's declarant nor its *Vaughn* index provides any indication that "factual segments" of the records at issue are so "intertwined with the policy-making process" as to render a line-by-line segregation futile. *Ryan*, 617 F.2d at 791. Indeed, the notion of "intertwined" content only appears in DHS's recitation of relevant caselaw. *See* Def.'s Br. at 23–24.

## VI. *In camera* review would be appropriate.

A district court may conduct *in camera* inspection of an agency's withholdings to determine whether it has met its burden in justifying the application of any statutory exemptions. 5 U.S.C. § 552(a)(4)(B). Here, it would be appropriate for the Court to conduct *in camera* review of all twenty records for two reasons. *See Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) ("[D]istrict courts have 'broad discretion' to . . . [undertake] *in camera* review.").

*First*, DHS has failed to proffer satisfactory justifications for its exemption claims. *See supra* at pp. 4–22; *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998) ("If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination . . . the district court then has several options, including inspecting the

documents *in camera*[.]"); *Quiñon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1229 (D.C. Cir. 1996) ("[If] an agency's affidavits merely state in conclusory terms that documents are exempt . . . *in camera* review is necessary."). DHS also has not identified any non-generalized foreseeable harms in disclosure, *see supra* at pp. 22–28, and AFPF has called into question the adequacy of the agency's segregability efforts. *See supra* at pp. 28–30.

*Second*, *in camera* review would not be onerous. *See Quiñon*, 86 F.3d at 1228 (how many records to be inspected is "another . . . factor to be considered"). There are only 20 records in dispute, totaling 135 pages, and AFPF has already provided the Court with redacted copies. *See* Mulvey Decl. Exs. 5–24. If anything, *in camera* review would serve judicial economy. *See Carter v. Dep't of Com.*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[W]hen the requested documents 'are few in number and of short length,' *in camera* review may save time and money."). The Court should therefore order DHS to submit unredacted versions of the records for the Court's consideration.

## CONCLUSION

For these reasons, AFPF respectfully requests the Court to grant AFPF's cross-motion for summary judgment and deny DHS's motion. AFPF further requests the Court to order DHS to reprocess and reproduce the records at issue within twenty days.

Dated: September 14, 2026

Respectfully submitted,

*/s/ Ryan P. Mulvey*

Ryan P. Mulvey
D.C. Bar No. 1024362

AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

*Counsel for Plaintiff AFPF*