**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | Civil Action No. 22-2015 (CRC) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Federal Rule of Civil Procedure 56 and Rule 7(h) of the Local Civil Rules of the United States District Court for the District of Columbia, Plaintiff Americans for Prosperity Foundation ("AFPF") hereby responds to Defendant U.S. Department of Homeland Security's ("DHS") Statement of Material Facts Not in Dispute. *See* ECF No. 37-3. Defendant's numbered paragraphs are reproduced below, in the same column format, along with AFPF's responses.

As a general matter, AFPF objects to DHS's inclusion of multiple averments in each of its allegedly undisputed material facts. AFPF also objects to DHS's near-wholesale transposition of paragraphs from the Declaration of Catrina M. Pavlik-Keenan. *See* ECF No. 37-1.

//

//

//

| DEFENDANT'S STATEMENT OF MATERIAL FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 1. Catrina M. Pavlik-Keenan is the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Privacy Office of the U.S. Department of Homeland Security ("DHS" or the "Department"). Pavlik-Keenan ¶ 1. | Undisputed but immaterial. |
| 2. 3. [*sic*] The statements contained in this declaration are based upon my personal knowledge, my review of the documents kept by the DHS Privacy Office ("DHS-PRIV") in the ordinary course of business, and information provided to me by other DHS Headquarters ("DHS-HQ") employees in the course of my official duties. Pavlik-Keenan ¶ 3. | Undisputed but immaterial. AFPF notes that DHS's statement of facts is not a "declaration," and the allegations set out herein are not made by Ms. Pavlik-Keenan herself. |
| 3. Through the exercise of my official duties, I am familiar with DHS-PRIV's receipt and initial handling of the FOIA request dated May 5, 2022 (the "FOIA Request") submitted by Plaintiff, and the steps taken to respond to the FOIA Request. This is my first declaration in support of this FOIA litigation. Pavlik-Keenan ¶ 4. | With respect to the first sentence, undisputed but immaterial.<br><br>With respect to the second sentence, undisputed but immaterial. AFPF notes that DHS's statement of facts is not a "declaration," and the allegations set out herein are not made by Ms. Pavlik-Keenan herself. |
| 4. 5. [*sic*] I have personally reviewed the twenty records with redactions that Plaintiff continues to challenge. Pavlik-Keenan ¶ 5. | Undisputed but immaterial. AFPF notes that, despite the wording of DHS's statement, this allegation is not made by Ms. Pavlik-Keenan herself in the instant filing. |
| 5. The *Vaughn* Index addressing these twenty records with redactions that Plaintiff continues to challenge is attached as Exhibit A ("Pavlik-Kennan Decl. Ex. A."). I have | With respect to the first sentence, disputed and immaterial. DHS's *Vaughn* index is not attached to its statement of facts. The index was filed separately as an attachment to |

| | |
|---|---|
| personally reviewed the *Vaughn* Index, and incorporate it by reference, and all of its statements, into this declaration. Pavlik-Keenan Decl. ¶ 6. | DHS's motion for summary judgment. *See* ECF No. 37-2.<br><br>With respect to the second sentence, undisputed but immaterial. AFPF notes that DHS's statement of facts is not a "declaration," and the allegations set out herein are not made by Ms. Pavlik-Keenan herself. |
| 6. On March 12, 2026, Plaintiff reported it does not challenge the adequacy of DHS' search. Pavlik-Keenan Decl. ¶ 7. | Undisputed. *See* Decl. of Ryan P. Mulvey ¶ 24. |
| 7. In this case, DHS made supplemental releases in this matter for Interim responses 1-7 and 9-14 and determined that portions of the responsive records warrant withholding pursuant to Exemption 5, Exemption 6, and Exemption 7. Plaintiff continues to challenge twenty responsive records, which the DHS Privacy Office withheld pursuant to Exemption 5, Exemption 6, and Exemption 7. Pavlik-Keenan Decl. ¶ 8. | With respect to the first sentence, undisputed that DHS made supplemental releases in this matter over the course of roughly sixteen months. *See* Mulvey Decl. ¶¶ 20–21. Further undisputed that DHS determined to withhold those records under Exemptions 5, 6, and 7. Whether such withholding is correct is a legal conclusion to which no response is required.<br><br>With respect to the second sentence, undisputed. *See* Mulvey Decl. ¶ 22; Mulvey Decl. Exs. 5–24. AFPF notes, however, that the parties reached an agreement for the reprocessing of two of these records. Mulvey Decl. ¶¶ 25–26. |
| 8. DHS processed all records responsive to Plaintiff's request, including the twenty responsive records Plaintiff challenges, to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable non-exemption information. DHS did not withhold any reasonably segregable, | With respect to the first sentence, this is a legal conclusion to which no response is required. AFPF acknowledges that DHS has determined various FOIA exemptions apply to the records at issue, but AFPF contests whether those withholdings are correct.<br><br>With respect to the second sentence, this is a legal conclusion to which no response is required. Among other things, AFPF disputes that DHS has released all material in the public domain *via* adoption. *See, e.g.*, |

| | |
|---|---|
| nonexempt portions from Plaintiff. Pavlik-Keenan Decl. ¶ 9. | Pl.'s Statement of Undisputed Material Facts ¶¶ 28–34 (citing Mulvey Decl. Ex. 7 & 25).<br><br>With respect to the third sentence, this is a legal conclusion to which no response is required. AFPF disputes that DHS has conducted an adequate segregability review, as demonstrated by the fact most records have been withheld in full, or nearly in full. *See* Mulvey Decl. Exs. 5–24. |
| 9. As described in the attached *Vaughn* index, DHS applied FOIA Exemption (b)(5) to specific records noted therein to protect pre-decisional and deliberative information contained within the requested records because the information consists of thoughts, opinions, and pre-decisional impressions of DHS employees. This information included draft memoranda, initial outlines, discussions of outcomes related to a tabletop exercise and limited portions of emails containing initial and preliminary concepts for a Disinformation Governance Board, suggested response to media inquiries, analysis of DHS efforts, and recommendations pertaining to a potential event that did not occur. Many of these documents contain bullet lists and preliminary points, comments and extensive redline edits, and notes to different DHS offices requesting additional information or clarifications. In the attached *Vaughn* index, DHS also refers the Court and Plaintiff to the final versions or publicly released information when available. Pavlik-Keenan Decl. ¶ 11. | With respect to the first sentence, undisputed that DHS applied Exemption 5 to various records. The remainder of this statement is a legal conclusion to which no response is required. AFPF disputes that DHS has met its burden to establish the pre-decisional or deliberative quality of all the records at issue.<br><br>With respect to the second and third sentences, undisputed that the records at issue, to varying degrees, include some of the types of communications identified by DHS. That fact, however, does not establish the lawfulness of DHS's withholdings.<br><br>With respect to the fourth sentence, disputed. DHS's *Vaughn* index only directs AFPF and the Court to a landing page for an online reading room. It does not provide any direct link to discrete records, such as those provided by AFPF as part of its opposition. *See* Mulvey Decl. Exs. 2 & 25. |

| | |
|---|---|
| 10. DHS withheld the deliberative portions of these records to prevent a chilling effect on the open and frank discussions on matters of policy between DHS employees, as this would undermine the agency's ability to perform its duties. DHS depends upon the ability of its employees to offer candid ideas and opinions to agency decision-makers and to each other without the fear of public exposure; to curtail this process would be detrimental to DHS and all governmental entities. DHS also withheld information about outcomes from a Tabletop Exercise that DHS conducted to evaluate the role and responsibilities of DHS offices and components, summarizes lessons learned and identifies potential options for changing the roles and responsibilities of DHS offices and components. Release of these types of deliberations would cause harm to DHS' ability to prepare for potential scenarios or crisis situations. DHS uses tabletop exercise to understand potential weaknesses and strengths in its ability to respond to such scenarios or crisis situations. Releasing these types of deliberations would have a direct chilling effect on offices agreeing to participate in similar tabletop exercise in the future. Release of this information would disclose pertinent and significant pre-decisional recommendations, opinions, and considerations undertaken by Agency personnel in deliberations. Pavlik-Keenan Decl. ¶ 12. | With respect to the first sentence, this is a legal conclusion to which no response is required.<br><br>With respect to the second sentence, undisputed that DHS—like any other federal agency—has an interest in the candor and engagement of its employees. To the extent this statement is meant to imply that DHS satisfied the technical prerequisites for Exemption 5, let alone the foreseeable-harm standard, that is a legal conclusion to which no response is required.<br><br>With respect to the third sentence, undisputed that DHS avers it withheld a record reflecting an agency "Tabletop Exercise." *See* Mulvey Decl. Ex. 4. To the extent DHS intends to imply that withholding is correct, it is a legal conclusion to which no response is required.<br><br>With respect to the fourth sentence, insofar as this implies DHS has satisfied the foreseeable-harm standard, it is a legal conclusion to which no response is required.<br><br>With respect to the fifth sentence, undisputed that DHS uses tabletop exercises. To the extent DHS intends to imply this has any bearing on the lawfulness of its withholdings, it is a legal conclusion to which no response is required.<br><br>With respect to the sixth and seventh sentences, insofar as the statements are meant to imply DHS satisfied the foreseeable-harm standard, they are legal conclusions to which no response is required. |
| 11. Numerous responsive records were initial concept and planning | With respect to the first sentence, undisputed that the records at issue may reflect, in part, |

| | |
|---|---|
| documents that contained DHS employees' initial considerations and thoughts. The release of these types of deliberative material would directly impact the ability of employees to plan and analyze questions and issues in writing. Pavlik-Keenan Decl. ¶ 13. | "initial concept and planning." To the extent this statement is meant to imply that DHS's withholdings are lawful, it is a legal conclusion to which no response it required.<br><br>With respect to the second sentence, insofar as this is meant to imply DHS has satisfied the foreseeable-harm standard, it is a legal conclusion to which no response is required. |
| 12. The disclosure of draft documents and the comments contained therein could mislead the public, as the comments and text of draft documents often differ, sometimes significantly, from final agency positions. Disclosure of such material could also cause the same effect noted in paragraph 12. Pavlik-Keenan Decl. ¶ 14. | With respect to both sentences, disputed. The mere fact a document is a draft—or is marked "DRAFT"—or otherwise qualifies as pre-decisional and deliberative does not make it inherently misleading to the public. DHS released in full a copy of the final, signed charter for the Disinformation Governance Board, yet it was still marked "DELIEBRATIVE" and "DRAFT." Mulvey Decl. Ex. 2.<br><br>DHS's statements, insofar as they imply DHS has met its burden to withhold the records at issue, are legal conclusions to which no further response is required.<br><br>APFF notes it is unclear what "paragraph 12" is intended to refer to, as this constitutes paragraph 12 of DHS's statement of facts. |
| 13. As more fully described in the *Vaughn* index, DHS also applied FOIA Exemption (b)(5) to specific records noted therein to protect attorney work product and attorney-client privileged communications. Those records so noted on the *Vaughn* Index contain the mental impressions, opinions, and legal analyses of attorneys for DHS. Those records also contain communications made in confidence for purposes of obtaining or providing legal advice. Disclosure of this information would | With respect to the first, second, and third sentences, undisputed that DHS has applied Exemption 5 to a pair of records—*viz.*, Records 7 and 10, *see* Mulvey Decl. Exs. 11 & 14—that it believes qualify for protection under the attorney work-product and attorney-client privileges. To the extent DHS intends to imply it has established the applicability of those privileges, that is a legal conclusion to which no response is required. AFPF disputes DHS's further characterization of these records. DHS's *Vaughn* Index fails to indicate (1) how the relevant records were created in anticipation in litigation, (2) whether they were prepared |

| | |
|---|---|
| have a chilling effect on the ability of agency attorneys to effectively prepare analysis and communicate with their agency clients and to effectively prepare to represent the agency in anticipation of or in pending litigation. In order to ensure that agency attorneys are able to give the most complete and effective advice it is essential that their clients be confident that information they provide to their attorneys remains confidential. Likewise, the attorneys providing the advice must be confident in its confidentiality in order to provide comprehensive advice and prepare comprehensive analysis. The erosion of this confidence will affect the willingness of clients to be fully candid with their attorneys and the attorneys to provide comprehensive advice. Without full and frank discussions between the agency and its attorneys, the agency's decision-making process will be diminished. In addition to the work product and attorney client privileges applying to redactions on these records, these redactions have overlapping coverage by the deliberative process privilege; this is because records Bates Stamp DHS-001-002015-000834-837 and DHS-001-002015-001268-1270 also reflect staff members' developing, preliminary assessments about matters on which no final decision has yet been made. Pavlik-Keenan Decl. ¶ 15. | by an attorney at the request of the agency for the purposes of soliciting legal advice, (3) whether they contain confidential client information or otherwise reflect confidential communications, and (4) whether DHS maintained their confidentiality. *See* DHS *Vaughn* Index at Lines 9 & 12.<br><br>With respect to the fourth, fifth, sixth, seventh, and eight sentences, AFPF acknowledges the historical importance of the attorney-client and attorney work-product privileges. Insofar as DHS intends to imply that the importance of attorney privilege by itself justifies its use of Exemption 5—or its satisfaction of the foreseeable-harm standard—that is a legal conclusion to which no response is required.<br><br>With respect to the ninth sentence, undisputed that DHS has also invoked the deliberative-process privilege for Records 7 and 10. But insofar as DHS intends this sentence to imply it has justified its use of the deliberative-process privilege, that is a legal conclusion to which no response is required. |
| 14. For the record set DHS-001-002015-000620, DHS will issue a supplemental release that will release the company letterhead, the date, and | With respect to the first sentence, undisputed.<br><br>With respect to the second sentence, undisputed. Insofar as DHS intends for this |

| | |
|---|---|
| the title of the document to correspond to the releases it is making in the record set DHS-001-002015-000618-19. DHS will continue to assert (b)(5) withholdings for the remainder of the document. DHS had a contractual relationship with the company who supplied the draft report. The contractor had a contract with DHS to provide communication analytics and this report contains analytical and deliberative information about narratives related to the DHS Disinformation Governance Board. Pavlik-Keenan Decl. ¶ 16. | statement to imply it has satisfied its burden to justify its use of Exemption 5, that is a legal conclusion to which no response is required.<br><br>With respect to the third and fourth sentences, immaterial. AFPF does not challenge DHS's reliance on the consultant-corollary doctrine vis-à-vis Record 14 (DHS-001-002015-000620). Mulvey Decl. ¶ 29. |
| 15. As more fully described in the attached *Vaughn* Index, DHS applied Exemption 6 to specific records noted therein. Pavlik-Keenan Decl. ¶ 17. | Undisputed that DHS has applied Exemption 6 to several of the records at issue. Of those records, two are the subject of an agreement for reprocessing. Mulvey Decl. ¶¶ 25–26. DHS indicated it will be reprocessing a third. Pavlik-Keenan Decl. ¶ 16. DHS has redacted sender information from the third record, which is an e-mail message. *See* DHS *Vaughn* Index at Line 10. |
| 16. When withholding information pursuant to Exemption 6, DHS is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purpose of this | With respect to all sentences, immaterial. These statements merely recite the relevant legal standards for Exemption 6. Insofar as DHS intends to imply it has justified its invocation of Exemption 6, that is a legal conclusion to which no response is required. |

| | |
|---|---|
| exemption, a public interest exists only when information about an individual would shed light on DHS' performance of its mission and function to enforce the law and defend the interests of the United States according to the law, to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans. Pavlik-Keenan Decl. ¶ 19. | |
| 17. The release of names, phone numbers, email address of DHS and other federal government employees would not aid the public's understanding of how the Department carries out its duties. Rather, the release of such information could subject those employees to unwarranted harassment, and as such the release of such information would "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6). The employees whose names are redacted in the documents are not senior leaders. They are not employees whose actions, decisions, or statements are subject to press coverage. The employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. For those DHS employees that are public figures, DHS released their names. Pavlik-Keenan Decl. ¶ 20. | With respect to all sentences, insofar as DHS implies that it has correctly interpreted and applied Exemption 6, that is a legal conclusion to which no response is required.<br><br>With respect to the first sentence, disputed. Information about government employees often advances public understanding of agency operations, even when those employees are not "public figures." Mulvey Decl. ¶ 31. |

| | |
|---|---|
| 18. The release of names of individuals that are not federal employees would not aid the public's understanding of how the Department carries out its duties. DHS released the names of the companies and domain addresses of emails to provide the public information about the companies that were working with DHS. Disclosure of the names of individuals employed by a private company that does business with DHS would constitute an unwarranted invasion of the privacy of these individuals and outweighs the public's need to know the names of these individuals. Releasing the names of the individuals would not shed light on DHS operations and activities, in addition to insights already gleaned by the companies that were communicating with DHS. Pavlik-Keenan Decl. ¶ 21. | With respect to the first sentence, immaterial. None of the Exemption 6 withholdings that remain at issue reflect the identifying information of non-federal employees. For the two records that do contain such information, the parties have reached an agreement for their reprocessing. Mulvey Decl. ¶¶ 25–26.<br><br>With respect to the second sentence, disputed. DHS has yet to reprocess and produce both records that are the subject of the parties' agreement. Mulvey Decl. ¶ 26.<br><br>With respect to the third and fourth sentences, immaterial in light of the parties' agreement for reprocessing. Insofar as DHS intends to imply its withholding of such information was lawful, that is a legal conclusion to which no response is required. |
| 19. For the record set DHS-001-002015-000618-19, DHS will issue a supplemental release that will release the domain names and institutional affiliations. DHS will continue to withhold the names of the individuals, as the privacy of these individuals outweighs the public's need to know the names, and does not shed light on DHS operations and activities. For the record set DHS-001-002015-000566-000581, DHS will also release the company names associated with the listed validators and will release the names of public figures located at DHS-001- 002015-000577-578. DHS will continue to withhold the names of individuals who are not public figures, as the privacy of these individuals | With respect to all sentences, undisputed that DHS agreed to reprocess and produce two records pursuant to an agreement between the parties. *See* Mulvey Decl. ¶¶ 25–26. But insofar as DHS intends to imply that its continued withholding of certain information is based on anything but this agreement, AFPF disputes such characterization. AFPF has not conceded the lawfulness of DHS's withholding determinations regarding the names of any individuals who are not "public figures." |

| | |
|---|---|
| outweighs the publics need to know the names and does not shed light on DHS operations and activities. Pavlik-Keenan Decl. ¶ 22. | |
| 20. As more fully described in the attached *Vaughn* Index, DHS applied Exemption 7 to specific records noted therein. Pavlik-Keenan Decl. ¶ 23. | Undisputed that DHS has invoked Exemption 7(E) as grounds for withholding two records. *See* Mulvey Decl. Exs. 8 & 14. |
| 21. The information for which the DHS asserted Exemption (b)(7) satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. DHS is responsible for identifying and eliminating vulnerabilities within the nation's borders. DHS leverages the collective capabilities of its operational Components to identify opportunities for jointness and integration. Through a comprehensive and collaborative approach, DHS ensures its operators have the necessary tools, resources, and authorities to execute DHS' mission. Pavlik-Keenan Decl.¶ 25. | With respect to the first sentence, this is a legal conclusion to which no response is required.<br><br>With respect to the remaining sentences, undisputed that DHS and its component agencies are charged by statute with enforcing various laws. Whether this adequately demonstrates that DHS has satisfied Exemption 7's threshold requirement is a legal conclusion to which no response is required.<br><br>AFPF notes, further, that DHS has not addressed the legal authority for the Disinformation Governance Board and its activities. Nor has the agency explained how the Board itself was engaged in law-enforcement functions, such that *its* records qualify for protection under Exemption 7. |
| 22. The information at issue here relates to the Customs and Border Protection (CBP) and Office of Intelligence and Analysis (I&A), and the investigation and techniques used to respond to certain types of terrorist scenarios. CBP is charged with enforcing immigration laws and interdicting | With respect to the first sentence, disputed. The records at issue concern the Disinformation Governance Board and its activities, namely, a "Ukraine Mis- Dis- and Mal-Information (MDM) Tabletop Exercise" and the legal authorities for DHS's operation in the "MDM Space." DHS *Vaughn* Index at Lines 6 &12. |

| | |
|---|---|
| individuals who attempt to illegally enter or move contraband across the U.S. borders between official point of entry under the Homeland Security Act of 2002. See 6 U.S.C. § 211. In keeping records related to law enforcement techniques and evaluating those techniques to address threats DHS is concerned about, DHS is acting in the interest of its employees who are working to ensure that these policies are enacted, that they are fair and that they provide the greatest level of safety to the public and to DHS employees. The Office of Intelligence and Analysis has broad intelligence – and information – gathering and sharing responsibilities under the Homeland Security Act of 2002, Executive Order No. 12,333, as amended and Executive Order No. 13,388. These responsibilities obligate I&A to gather and share intelligence information in support of DHS's broader counterterrorism, homeland security, and component specific missions; in support of the broader national intelligence mission of the Intelligence Community; and as part of the federal information-sharing environment. Pavlik-Keenan Decl. ¶ 26. | With respect to the second sentence, undisputed that DHS and its component agencies are charged by statute with enforcing various laws, including the immigration code. Whether this statement adequately demonstrates that DHS has satisfied Exemption 7's threshold requirement is a legal conclusion to which no response is required.<br><br>With respect to the third sentence, insofar as DHS presumes the records at issue satisfy Exemption 7's threshold, that is a legal conclusion to which no response is required.<br><br>With respect to the fourth sentence, undisputed that DHS and its component agencies are charged by statute with enforcing various laws, including those related to intelligence and counterterrorism. Whether this statement adequately demonstrates that DHS has satisfied Exemption 7's threshold requirement is a legal conclusion to which no response is required. |
| 23. DHS applied FOIA Exemption (b)(7)(E) to protect law enforcement sensitive information pertaining to law enforcement techniques and procedures in deliberative draft documents. As described in the *Vaughn* index, DHS withheld information relating to deliberations about scenarios for potential terrorist threats and potential courses of action DHS may take to address those | With respect to the first sentence, undisputed that DHS has concurrently invoked Exemption 5, in conjunction with the deliberative-process privilege, and Exemption 7 to justify its treatment of Record 4. *See* Mulvey Decl. Ex. 8; DHS *Vaughn* Index at Line 6.<br><br>With respect to the remaining sentences, immaterial. None of these claims relate to or otherwise justify DHS's invocation of |

| | |
|---|---|
| threats, and discussions about DHS' Office of Intelligence and Analysis functions. Disclosure of this information would enable persons seeking to engage in criminal or terrorist activity to overcome law enforcement efforts by knowing the type of responses to expect, as well as potentially identify weaknesses in response that would allow such persons to overcome law enforcement efforts and elude detection. Pavlik-Keenan Decl. ¶ 28. | Exemption 7. Whether this statement adequately demonstrates that DHS has satisfied Exemption 7's threshold requirement is a legal conclusion to which no response is required. |
| 24. As more fully described in the *Vaughn* index as to specific records, DHS withheld information related to a tabletop exercise pursuant to (b)(7)(E) to protect information pertaining to guidelines and techniques used to address terrorist and cyber-attacks and developing plans for immigration emergencies. Pavlik-Keenan Decl. ¶ 29. | Undisputed that DHS applied Exemption 7(E) to a "tabletop exercise." *See* Mulvey Decl. Ex. 8; DHS *Vaughn* Index at Line 6.<br><br>As to the remainder of the sentence, disputed. These records were created for the purpose of discussing DHS's potential "response[s]" to MDM situations. DHS *Vaughn* Index at Line 6. Whether Exemption 7(E) properly applies to the records is a legal conclusion to which no response is required. |
| 25. The information DHS has applied Exemption 7(E) to is law enforcement sensitive information related to CBP's techniques for managing border crossings at official points of entry, techniques CBP may utilize in an emergency situation to protect the U.S. borders, and an assessment about the current techniques. Additionally, disclosure would reveal I&A's techniques for developing intelligence reports and how those reports are used to address emerging threat situations. The release of this type of information would reasonably be expected to risk circumvention of the law, as this information would enable individuals | With respect to all sentences, insofar as DHS intends to imply that such alleged facts satisfy the agency's burden for applying Exemption 7(E), that is a legal conclusion to which no response is required. Otherwise, undisputed that DHS avers the records at issue contain information related to CBP's activities or "I&A"'s activities. Again, whether such information is properly protected by Exemption 7(E) is a legal conclusion to which no response is required. |

| | |
|---|---|
| considering the threat vectors discussed in the scenarios to avoid detection by DHS and the Intelligence Community, thereby endangering U.S. national security. Disclosure of these internal strategies and practices could permit people seeking to violate or circumvent the law to take proactive steps to counter operational actions taken by CBP and I&A. Pavlik-Keenan Decl. ¶ 30. | |
| 26. The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory duties. Pavlik-Keenan Decl. ¶ 31. | This is a legal conclusion to which no response is required. |
| 27. This type of information is utilized for law enforcement purposes as it is in furtherance of CBP's and I&A's mission, and to ensure that these operations are not hindered by actions of bad actors who may obtain access to confidential law enforcement sensitive information and intelligence. Pavlik-Keenan Decl. ¶ 32. | Insofar as DHS refers here to CBP and "I&A" information in the abstract, this statement is immaterial. The proper focus of the Court's inquiry is the use of information by the Board, and its creation of records in furtherance of its activities. Whether Exemption 7(E) properly applies to the records at issue is a legal conclusion to which no response is required. |
| 28. A line-by-line review of the twenty records that are described in further detailed in the attached *Vaughn* Index was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. Foreseeable harm would result from any further disclosure of these twenty records. That foreseeable harm is discussed elsewhere in this declaration and in | With respect to the first sentence, undisputed that DHS avers it undertook efforts to satisfy its duty to segregate out and release non-exempt portions of responsive records. Insofar as this statement implies that DHS has satisfied its obligations under the FOIA in that regard, it is a legal conclusion to which no response is required.<br><br>With respect to the second and third sentences, these statements reflect a legal conclusion to which no response is required. |

| | |
|---|---|
| the attached *Vaughn* Index. Pavlik-Keenan Decl. ¶ 34. | AFPF also notes that DHS's statement of facts is not a "declaration," there is no *Vaughn* index attached to the statement of facts, and the allegations set out herein are not made by Ms. Pavlik-Keenan herself. |
| 29. With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. Pavlik-Keenan Decl. ¶ 35. | This statement reflects a legal conclusion to which no response is required. |

* * *

Dated: September 14, 2026

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362

AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

*Counsel for Plaintiff AFPF*